RICHLAND HOSPITAL, INC. ET AL. *v.* RALYON ET AL., APPELLEES;
CARTER-JONES LUMBER CO. ET AL., APPELLANTS.

[Cite as Richland Hospital, Inc. *v.* Ralyon (1987),
33 Ohio St. 3d 87.]

(No. 86-1388—Decided November 18, 1987.)

88

*Stephen Cockley* and *David Homer*, for appellees.

*Holder & Schiavone Co., L.P.A., William P. Holder, Jr.* and *Elizabeth A. Raies,* for appellants.

MOYER, C.J. This case presents two issues of first impression. The first is whether the concurrent subject matter jurisdiction vested in state courts under the Employee Retirement Security Act ("ERISA"), Section 1001 *et seq.,* Title 29, U.S. Code, includes claims for benefits, punitive damages and attorney fees. Second, we must determine whether ERISA pre-empts a state common-law action asserting express, willful and malicious misrepresentation of benefit coverage under a self-insured employee benefit plan.

To protect plan participants and beneficiaries, ERISA comprehensively regulates employee benefit plans, including those providing medical, surgical, or hospital benefits by requiring the reporting and disclosure of financial and other pertinent information; by establishing uniform standards for fiduciaries of employee benefit plans; and by providing for appropriate remedies in both state and federal courts. Sections 1001(b),[3] 1132 and 1144, Title 29, U.S. Code.

[3] "[Section] 1001. Congressional findings and declaration of policy:

## A

Carter-Jones and the Carter Plan properly raise, for the first time in this appeal, the question of the trial court's subject matter jurisdiction to determine the issues upon which it rendered judgment. *Baltimore & Ohio RR. Co.* v. *Hollenberger* (1907), 76 Ohio St. 177, 81 N.E. 184; *Jenkins* v. *Keller* (1966), 6 Ohio St. 2d 122, 35 O.O. 2d 147, 216 N.E. 2d 379; Civ. R. 12(H)(3).

It is clear from the record that the Carter Plan was organized under ERISA[4] and is subject to its provision regarding the jurisdiction of federal and state courts to hear causes of ac-

tion brought under the Act. The first question for decision is whether there is concurrent state court jurisdiction of the Ralyons' claims for indemnification (benefits) from Carter-Jones in the amount of their medical bills, punitive damages, and attorney fees.[5]

ERISA vests state and federal courts with concurrent subject matter jurisdiction of certain enumerated civil actions brought by participants or beneficiaries against an employee benefit plan. Section 1132(e)(1), Title 29, U.S. Code states:

"(e) Jurisdiction

"(1) Except for actions under sub-

---

"* * *

"(b) Protection of interstate commerce and beneficiaries by requiring disclosure and reporting, setting standards of conduct, etc., for fiduciaries

"It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

[4] Sections 1002(1) and 1003(a)(1), Title 29, U.S. Code, read:

"1002. Definitions

"For purposes of this subchapter:

"(1) The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unem-

ployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions)."

"1003. Coverage

"(a) Except as provided in subsection (b) of this section and in sections 1051, 1081, and 1101 of this title, this subchapter shall apply to any employee benefit plan if it is established or maintained—

"(1) by any employer engaged in commerce or in any industry or activity affecting commerce * * *."

[5] While the dissent seeks to characterize the Ralyons' cross-claim against Carter-Jones as one outside the scope of ERISA, the Ralyons' allegations of express, willful, and malicious misrepresentation, and request for indemnification from Carter-Jones against the claims of the plaintiffs, of necessity, concern the company's fulfillment of its duties under the plan, require reconsideration of the benefit provisions of the plan offered to employees, and, further, implicate the fiduciary duties owed under ERISA by Vincent Graham, whose communication with the hospital forms the basis of this claim. See footnote 1, *supra.* Consequently, the claims relate to administration of the plan and fall within the broad scope of ERISA.

section (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section."

Subsection (a)(1)(B) provides:

"(a) Persons empowered to bring a civil action

"A civil action may be brought—

"(1) by a participant or beneficiary —

"(* * *

"(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

The controlling language of Sections 1132(e)(1) and (a)(1)(B), Title 29, U.S. Code, expressly limits the types of actions that may be brought against benefit plans in state courts to the recovery of benefits due under the plan, the enforcement of rights under the plan, or the clarification of rights to future benefits under the plan. Any action that is not included in subsection (a)(1)(B) falls within the exclusive subject matter jurisdiction of federal courts. The plain language of subsection (a)(1)(B) establishes that state courts clearly have jurisdiction concurrent with that of the federal courts to award benefits due under the terms of a self-insured employee benefit plan adopted pursuant to ERISA. Thus, we conclude that the Ralyons' claim for indemnification for medical benefits allegedly due, but refused after proper demand, was properly filed in the common pleas court.

ERISA expressly authorizes state and federal courts, in their discretion, to award reasonable attorney fees and costs to either party in actions brought under ERISA. *Massachusetts Mut. Life Ins. Co.* v. *Russell* (1985), 473 U.S. 134, 147.

The statutory authority is found in Section 1132(g)(1), Title 29, U.S. Code, which provides in part:

"(g) Attorney's fees and costs; awards in actions involving delinquent contributions

"(1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

Therefore, the Ralyons' request for attorney fees was properly before the court.

By contrast, however, application of the plain language of Section 1132 (a)(1)(B) leads us to further conclude that state courts have no jurisdiction to award extracontractual punitive damages in actions to recover benefits due under an employee benefit plan adopted pursuant to ERISA. Subsection (a)(1)(B) expressly limits the actions cognizable in state courts and only provides for the enforcement of contractual rights as remedies. If available under ERISA, the award of extracontractual punitive damages lies within exclusive federal jurisdiction. While the court in *Massachusetts Mut. Life Ins. Co.* v. *Russell, supra,* held that individual beneficiaries and participants could not recover extracontractual punitive damages for breach of fiduciary duty under Section 1109(a), Title 29, U.S. Code, it left unanswered their availability under Section 1132(a)(3), Title 29, U.S. Code. *Id.* at 139, fn. 5. Several lower federal courts have proceeded to recognize the availability of such damages under subsection 1132(a)(3). See *Smith* v. *ABS*

*Industries, Inc.* (N.D. Ohio 1986), 653 F. Supp. 94. The trial court, therefore, lacked jurisdiction to consider the Ralyons' claim for extracontractual punitive damages.

## B

Having determined the scope of concurrent jurisdiction vested in state courts, we next apply ERISA's pre-emption provisions to this case.

Section 1144(a), Title 29, U.S. Code, provides that state laws that "relate to" employee benefit plans are superseded by ERISA:

"[Section] 1144. Other laws

"(a) Supersedure; effective date

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975."

This pre-emption provision encompasses "* * * all laws, decisions, rules, regulations, or other State action having the effect of law, of any State * * *." Section 1144(c)(1), Title 29, U.S. Code.

The United States Supreme Court has broadly interpreted Section 1144(a), Title 29, U.S. Code, *Shaw* v. *Delta Air Lines, Inc.* (1983), 463 U.S. 85, 98, to pre-empt state laws that are consistent with ERISA's substantive requirements, *Metropolitan Life Ins. Co.* v. *Massachusetts* (1985), 471 U.S. 724, 739, and state laws indirectly bearing on employee benefit plans, *Alessi* v. *Raybestos-Manhattan, Inc.* (1981), 451 U.S. 504, 525. See, also, *Pilot Life Ins. Co.* v. *Dedeaux* (1987), 481 U.S. ___, 95 L.Ed. 2d 39:

"A law 'relates to' an employee benefit plan, in the normal sense of the phrase [and is therefore pre-empted], if it has a connection with or reference to such a plan." *Shaw* v. *Delta Air Lines, supra,* at 96-97. See, also, *Metropolitan Life Ins. Co.* v. *Massachusetts, supra,* at 739; *Pilot Life Ins. Co.* v. *Dedeaux, supra,* at 48.

Applying this statutory language as interpreted, a state common-law claim asserting express, willful and malicious misrepresentation against a self-insured employee benefit plan is clearly pre-empted by ERISA. In the context of the cause *sub judice,* ERISA requires pre-emption of such state claims brought against an employer for acts undertaken in the administration of a benefit plan. While the Ralyons' claim of misrepresentation is founded in part upon fiduciary misconduct, their claim implicitly relies upon and "relates to" the language of the plan under which they claim entitlement to benefits.[6] As none of the exceptions to pre-emption under Section 1144(b), Title 29, U.S. Code, apply to the Carter Plan, pre-emption is mandated.[7] *Pilot Life Ins. Co.* v. *Dedeaux, supra;* cf. *O'Grady* v. *Firestone Tire & Rubber Co.* (S.D. Ohio 1986), 635 F. Supp. 81,

---

[6] See footnote 5, *supra.*

[7] We acknowledge that *Provience* v. *Valley Clerks Trust Fund* (E.D. Calif. 1981), 509 F. Supp. 388, upon facts similar to those *sub judice,* held that state common-law causes of action for fraud, bad faith, and intentional infliction of emotional harm were not pre-empted by ERISA. However, in light of the broad interpretations of

ERISA's pre-emption provisions in Section 1144(a), Title 29, U.S. Code, *Provience* v. *Valley Clerks Trust Fund, supra,* certainly represents a minority view, as noted in *Ogden* v. *Michigan Bell Tel. Co.* (E.D. Mich. 1983), 571 F. Supp. 520, 523, and *Gordon* v. *Matthew Bender & Co., Inc.* (N.D. Ill. 1983), 562 F. Supp. 1286, 1293, if not contrary to law. See *Pilot Life Ins. Co.* v. *Dedeaux, supra.*

83 (equitable estoppel claim preempted).

Furthermore, to the extent the Ralyons' claim predicates recovery upon breaches of fiduciary duties (express, willful and malicious misrepresentation of coverage followed by denial of benefits), state courts have no jurisdiction to grant relief.[8] "That the federal courts have exclusive jurisdiction over ERISA claims for breach of fiduciary duties is settled." *Central States Southeast & Southwest Areas Health & Welfare Fund* v. *Old Security Life Ins. Co.* (C.A. 7, 1979), 600 F. 2d 671, 676, and cases cited. See, also, *Spitzer* v. *Dytronics Co.* (1984), 13 Ohio App. 3d 275, 13 OBR 340, 468 N.E. 2d 1135; Sections 1132(e)(1) and (a)(3), Title 29, U.S. Code.

Noting that the Ralyons' cross-complaint sounded in both tort and contract, the court of appeals also concluded that, in addition to their claim for misrepresentation, the Ralyons were entitled to recovery based upon contract principles. The court of appeals declared that the plan's definition of "hospital" was void, finding that the plan's requirement that surgical facilities be operated continuously on the hospital premises was contrary to state statutory definitions of "hospital," and thus contrary to law.

By excising the plan's limiting definition of hospital,[9] the medical bills incurred by the Ralyons at Richland Hospital were deemed by the court of appeals to be covered by the plan.

This application of state law cannot stand under ERISA's pre-emption provisions. The parties to an ERISA plan may define the terms and conditions under which benefits are made available. *Metropolitan Life Ins. Co.* v. *Massachusetts, supra,* at 735; *Shaw* v. *Delta Air Lines, Inc., supra,* at 91. The application of these terms and conditions is controlled by federal, not state, law. The appellate court's use of a state statutory definition of "hospital" to interpret the contract threatens the plan trustees with conflicting and inconsistent state regulation, and illustrates Congress' purpose in pre-empting state laws relating to employee benefit plans. *Shaw* v. *Delta Air Lines, Inc., supra,* at 98-99. While state trial courts can award benefits due under ERISA plans, their rationale must be consistent with federal law. Accordingly, the alternative contract rationale urged in support of the Ralyons' cause of action is pre-empted. The effect of pre-emption in this instance is to vacate the award of benefits because the award is based upon state law.[10]

---

[8] Allegedly wrongful fiduciary acts of Carter-Jones and the trustees which were brought out by the evidence included the failure of Carter-Jones to provide Ken Ralyon a plan summary; the actions of the trustee representing medical coverage to the hospital and inducing reliance by the Ralyons to their detriment; and various failures of the plan trustees to insulate the claim review procedure from the interests of Carter-Jones. Relevant statutory and fiduciary duties under ERISA would include Section 1021, Title 29, U.S. Code, duty of disclosure and reporting; and Section 1104, Title 29, U.S. Code, fiduciary duties.

[9] The plan's definition of "hospital" states, in pertinent part, that an institution is a hospital if:

"2) It fully meets all the following tests:

"a) It maintains on the premises, diagnostic and therapeutic facilities for surgical and medical diagnosis and treatment of sick and injured persons * * *

"* * *

"c) It is operated continuously with organized facilities for operative surgery on the premises."

[10] We note that no cases in the developing federal common law of ERISA have been found recognizing contract principles

Some trial courts, presented with state law claims pre-empted by ERISA, have nonetheless proceeded to consider the underlying facts alleged as the basis for an ERISA claim. *O'Grady* v. *Firestone Tire & Rubber Co., supra,* at 83-84. Cf. *Reed* v. *Standard Slag Co.* (Apr. 28, 1987), Scioto App. No. CA 1585, unreported. As in *O'Grady* v. *Firestone Tire & Rubber Co., supra,* the underlying facts, here, state a claim for arbitrary and capricious denial of benefits. However, because the record before us is insufficient to enable us to consider issues other than pre-empted issues of state law, we decline to consider, in the first instance, the substantive issues arising under ERISA. Cf. *Pilot Life Ins. Co.* v. *Dedeaux, supra,* at 54 (upon finding state law claims pre-empted, judgment reversed). *Wallingford* v. *Local Union 407 Insurance Fund* (Dec. 4, 1986), Cuyahoga App. Nos. 51084 and 51176, unreported, at 9-10 (cause reversed and remanded; under Civ. R. 8, the operative facts pleaded formed a sufficient basis for remand for further proceedings).

The foregoing analysis compels us to vacate the award of benefits and to conclude that the trial court had no jurisdiction to award punitive damages. We further conclude that there remains no basis upon which to sustain the award of attorney fees to the Ralyons.

Accordingly, the judgment of the court of appeals is reversed and the cause is remanded to the trial court with instructions to dismiss the claim for punitive damages and conduct further proceedings on the claim for arbitrary and capricious denial of benefits in light of ERISA and consistent with this opinion.

*Judgment reversed and cause remanded.*

LOCHER, HOLMES and WRIGHT, JJ., concur.

SWEENEY, DOUGLAS and H. BROWN, JJ., dissent.

SWEENEY, J., dissenting. I must respectfully dissent from today's holding because it is my firm conviction that the majority misapplies the law, misconstrues the facts and, in the process, compounds the injustice already visited upon Julia and Kenneth Ralyon.

I

Even the most cursory review of this action leads to the unmistakable conclusion that its disposition does not turn on the eleventh-hour ERISA preemption argument advanced by the appellants. In this regard, it should be observed at the outset that co-appellants, Carter-Jones Lumber Com-

---

which permit a different result. For example, federal courts have refused to apply common-law theories of oral modification, *Nachwalter* v. *Christie* (C.A. 11, 1986), 805 F. 2d 956; *Murphy* v. *Curran Contracting Co.* (N.D. Ill. 1986), 648 F. Supp. 986; equitable estoppel, *O'Grady* v. *Firestone Tire & Rubber Co., supra;* but, compare, *Dockray* v. *Phelps Dodge Corp.* (C.A. 9, 1986), 801 F. 2d 1149 (equitable estoppel applied to ERISA actions involving pension plans); promissory estoppel, *United Electrical Radio & Machine Workers of* *America* v. *Amcast Industrial Corp.* (S.D. Ohio 1986), 634 F. Supp. 1135; or improper processing of benefit claims, *Pilot Life Ins. Co.* v. *Dedeaux, supra;* in reviewing the award or denial of benefits under benefit plans (other than pension plans). Misrepresentation theories have been applied to determine pension benefits, *Dockray* v. *Phelps Dodge Corp., supra;* cf. *Darden* v. *Nationwide Mut. Ins. Co.* (C.A. 4, 1986), 796 F. 2d 701, but not other benefit determinations.

pany ("Carter-Jones") and Carter Employee Welfare Plan Trust ("Trust"), failed to advance the argument relied upon by the majority in either the trial court or the court of appeals. It is axiomatic that issues not presented for consideration below will not be entertained by this court on appeal. *Hoffman* v. *Staley* (1915), 92 Ohio St. 505, 112 N.E. 1084; *Clarington* v. *Althax* (1930), 122 Ohio St. 608, 174 N.E. 251; *State, ex rel. Babcock,* v. *Perkins* (1956), 165 Ohio St. 185, 59 O.O. 258, 134 N.E. 2d 839, paragraph three of the syllabus; *Hamlin* v. *McAlpin Co.* (1964), 175 Ohio St. 517, 26 O.O. 2d 206, 196 N.E. 2d 781, paragraph one of the syllabus; *State, ex rel. Royal,* v. *Columbus* (1965), 3 Ohio St. 2d 154, 155, 32 O.O. 2d 147, 148, 209 N.E. 2d 405, 407; *State* v. *Phillips* (1971), 27 Ohio St. 2d 294, 302, 56 O.O. 2d 174, 178, 272 N.E. 2d 347, 352; *State* v. *Williams* (1977), 51 Ohio St. 2d 112, 5 O.O. 3d 98, 364 N.E. 2d 1364, paragraph two of the syllabus; *State* v. *Barker* (1978), 53 Ohio St. 2d 135, 147-148, 7 O.O. 3d 213, 220, 372 N.E. 2d 1324, 1333; *State* v. *Cornely* (1978), 56 Ohio St. 2d 1, 4, 10 O.O. 3d 1, 2, 381 N.E. 2d 186, 189; *Hospitality Motor Inns, Inc.* v. *Gillespie* (1981), 66 Ohio St. 2d 206, 208, 20 O.O. 3d 209, 210, 421 N.E. 2d 134, 136, at fn. 2; *Cascioli* v. *Central Mut. Ins. Co.* (1983), 4 Ohio St. 3d 179, 180, 4 OBR 457, 458, 448 N.E. 2d 126, 127, at fn. 2; *Foran* v. *Fisher Foods, Inc.* (1985), 17 Ohio St. 3d 193, 194, 17 OBR 430, 431, 478 N.E. 2d 998, 999; *State* v. *Byrd* (1987), 32 Ohio St. 3d 79, 87, 512 N.E. 2d 611, 620. As acknowledged by the majority, state courts have concurrent jurisdiction to consider a claim for benefits under ERISA. Therefore, the preemption issue urged by appellants is not jurisdictional in nature. Accordingly, it is waived for purposes of review if not presented to the courts below. See *Amalgamated Cotton Garment &* *Allied Indus. Fund* v. *Dion* (1985), 341 Pa. Sup. 12, 15, 491 A. 2d 123, 124.

## II

Assuming *arguendo* that the issue is a proper subject for consideration by this court, it is abundantly clear that ERISA has no bearing upon the facts of the present controversy. A review of the procedural history of this case underscores this conclusion. The instant action was commenced when Richland Hospital, Inc. and Dr. Rodolfo S. Vocal filed a complaint against Julia and Kenneth Ralyon and Carter-Jones on June 5, 1984 seeking payment for services rendered by the plaintiffs. The demand for judgment requested that the co-defendants be found jointly and severally liable for the amounts in issue. On June 20, 1984, the Ralyons answered and cross-claimed against Carter-Jones in indemnification for any amounts owed Richland Hospital and Dr. Vocal. They also sought punitive damages and reasonable attorney fees. Thereafter, on February 12, 1984, *Carter-Jones* moved to assert a third-party complaint against the Trust seeking indemnification of any amounts that Carter-Jones may be liable to Richland Hospital and the Ralyons. Thus, the issue regarding any claim against the Trust, and consequently the impact of any claim on an ERISA-regulated plan, arises only in the context of the third-party complaint of Carter-Jones against the Trust. It has absolutely no bearing on the cross-claim asserted by the Ralyons against Carter-Jones. Inasmuch as the cross-claim is not directed toward the Trust and the relief sought thereunder does not seek compensation from pension funds, ERISA preemption has no relevance thereto.

Moreover, the theory upon which the Ralyons' cross-claim is predicated concerns the actions of Carter-Jones in falsely representing to the Raylons

that coverage not afforded by the plan was available to them. Thus, no claim could be made upon the plan since the plan specifically excluded coverage by psychiatric hospitals such as Richland. Where the plan can not by the terms of its coverage be liable to a beneficiary thereunder, ERISA has no relevance to the controversy. See *Shaw* v. *Westinghouse Electric Corp.* (1980), 276 Pa. Sup. 220, 228, 419 A. 2d 175, 179.

### III

Assuming further that ERISA has any bearing on the instant controversy by virtue of Carter-Jones' self-serving third-party complaint against the Trust, it is readily apparent that the federal statute does not preclude the common-law claims of appellees. In order to determine the breadth of the preemption provision relied upon by the majority, it is first necessary to consider the purposes for which ERISA was enacted. Section 1001, Title 29, U.S. Code, sets forth the goals sought to be accomplished by enactment of the Employee Retirement Income Security Program. Subsections (b) and (c) thereof provide:

"(b) Protection of interstate commerce and beneficiaries by requiring disclosure and reporting, setting standards of conduct, etc., for fiduciaries.

"It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

"(c) Protection of interstate commerce, the Federal taxing power, and beneficiaries by vesting of accrued benefits, setting minimum standards of funding, requiring termination insurance.

"It is hereby further declared to be the policy of this chapter to protect interstate commerce, the Federal taxing power, and the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance."

The remedial nature of the Act as evidenced by these subsections is beyond dispute. See *Ellenburg* v. *Brockway, Inc.* (C.A. 9, 1985), 763 F. 2d 1091, 1095; *Cate* v. *Blue Cross & Blue Shield of Alabama* (E.D. Tenn. 1977), 434 F. Supp. 1187, 1190. Thus, the unmistakable import of these subsections as interpreted by the federal courts discloses a congressional intent to afford protection to employees by assuring the financial soundness of disability and retirement pension plans. Nevertheless, the majority today transforms the shield of financial protection into a sword wielded by unscrupulous employers to sidestep liability under state common-law doctrines. This conclusion is reached despite the well-recognized rule of statutory construction that "[p]reemption of state law by federal statute or regulation is not favored 'in the absence of persuasive reasons — either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.' " *Alessi* v. *Raybestos-Manhattan, Inc.* (1981), 451 U.S. 504, 522, quoting *Chicago & North Western Transp. Co.* v. *Kalo Brick & Tile Co.* (1981), 450 U.S. 311, 317. See, also, *Florida Lime & Avocado Growers, Inc.* v. *Paul* (1963), 373 U.S. 132, 142; *American Tel. &*

*Tel. Co.* v. *Merry* (C.A. 2, 1979), 592 F. 2d 118, 121; *Stone* v. *Stone* (N.D. Cal. 1978), 450 F. Supp. 919, 932; *Gast* v. *State, ex rel. Stevenson* (1978), 36 Ore. App. 441, 458, 585 P. 2d 12, 23. In order to justify this perverse application of ERISA, the majority relies upon *Shaw* v. *Delta Air Lines, Inc.* (1983), 463 U.S. 85, 98; *Metropolitan Life Ins. Co.* v. *Massachusetts* (1985), 471 U.S. 724, 739; *Alessi* v. *Raybestos-Manhattan, Inc., supra*; and *Pilot Life Ins. Co.* v. *Dedeaux* (1987), 481 U.S. ____, 95 L. Ed. 2d 39, 48. It is the contention of the majority that these decisions compel the conclusion that the preemption language of Section 1144(a), Title 29, U.S. Code, encompasses state common-law actions in tort. Section 1144(a) provides:

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. * * *"

In interpreting the breadth of Section 1144(a), the United States Supreme Court observed in *Alessi*:

"This provision demonstrates that Congress intended to depart from its previous legislation that 'envisioned the exercise of state regulation power over pension funds.' *Malone* v. *White Motor Corp.*, 435 U.S. 497, 512, 514 (1978) (plurality opinion), and meant to establish *pension plan regulation* as exclusively a federal concern." (Emphasis added.) 451 U.S. at 523.

It is hardly surprising therefore that the Supreme Court found the provisions of state law involved in *Alessi, Shaw,* and *Metropolitan* to be preempted by ERISA. *Alessi* involved the impact upon an ERISA-regulated plan of a provision in the New Jersey workers' compensation law which precluded the offset of workers' compensation benefits against any benefits realized from a pension plan.[11] In *Shaw,* the court was concerned with the economic consequences posed to an ERISA-governed welfare plan by the award of mandatory pregnancy benefits in accordance with the New York Human Rights and Disability Benefits Laws. In *Metropolitan,* the Supreme Court held that a Massachusetts law mandating minimum mental health care benefits with respect to an ERISA-regulated plan would be preempted by Section 1144(a), but for Section 1144(b) which specifically excludes state insurance laws from preemption. In each of the foregoing cases, the court was confronted with state statutes that *regulated* either directly or indirectly the

---

[11] Moreover, in *Alessi* v. *Raybestos-Manhattan, Inc.* (1981), 451 U.S. 504, the Supreme Court intimated that tort damages are unrelated to benefits obtained pursuant to a pension plan or awarded as part of a workers' compensation program. Thus, where workers' compensation benefits were considered analogous to pension benefits for purposes of their integration into a common employee welfare fund, the court observed that "[a] tort judgment typically represents a finding of the employer's fault for the employee's injury. Workers' compensation, in contrast, is generally available with no showing of an employer's fault or an employee's lack of fault for a work related injury." *Id.* at 520, fn. 16. It therefore concluded "that workers' compensation is as much an income maintenance program, responding to wage loss, as it is remuneration for injury, and therefore it may be integrated with pension benefits to the advantage of the entire employee group." *Id.* Inasmuch as tort damages are not dependent upon the availability of pension benefits or are tantamount thereto, their recovery in a common-law action does not relate to an ERISA plan for purposes of Section 1144(a).

*terms* of an ERISA-governed welfare plan.

*Pilot Life Ins. Co.* v. *Dedeaux, supra,* is similarly distinguishable. Although a cursory reading of *Pilot* may lead to the conclusion that state common-law actions such as the one presented in the instant case are preempted by ERISA, a closer reading of that case yields no such impression. *Pilot* involved the institution of an action by a beneficiary under an ERISA-regulated plan against Pilot Life as provider and administrator of a group insurance policy procured by the beneficiary's employer. The cause of action was predicated upon " 'Tortious Breach of Contract'; 'Breach of Fiduciary Duties'; and 'Fraud in the Inducement.' " 95 L. Ed. 2d at 45. Despite sounding in tort, the court observed that the basis for the relief sought was founded upon the Mississippi law of bad faith which "developed from general principles of tort and contract law available in any Mississippi *breach of contract case.*" (Emphasis added.) 95 L. Ed. 2d at 50. This holding has no bearing on the instant controversy. As previously noted, the cross-claim of the Ralyons is asserted against Carter-Jones, not the Trust. Thus, an ERISA-regulated plan is not at issue. Secondly, the claim of the Ralyons, despite its characterization by the court of appeals and the majority as being predicated upon breach of contract, reveals no such basis. A review of the cross-claim discloses no mention of breach of contract. The reason for this omission is obvious. No contract providing for care at facilities such as Richland Hospital existed. Therefore, there was no contract to breach. In fact, the claim

was predicated upon misrepresentations uttered by Vincent Graham as an agent and employee of Carter-Jones and the detrimental reliance thereon by the Ralyons.

It is apparent therefore that the foregoing authority does not support the conclusion that common-law tort actions are preempted by ERISA. Consequently, the holdings of numerous state and federal courts that such actions are unaffected by ERISA continue to be good law.[12] See *Provience* v. *Valley Clerks Trust Fund* (E.D. Cal. 1981), 509 F. Supp. 388, 392; *Miller* v. *Lay Trucking Co., Inc.* (N.D. Ind. 1985), 606 F. Supp. 1326, 1333; *Hoffman* v. *Chandler* (Ala. 1983), 431 So. 2d 499, 504; *Shaver* v. *N.C. Monroe Constr. Co.* (1983), 63 N.C. App. 605, 610, 306 S.E. 2d 519, 523. Moreover, in *Franchise Tax Bd.* v. *Constr. Laborers Vacation Trust* (1983), 463 U.S. 1, 25, the Supreme Court discussed the types of civil actions maintainable under ERISA pursuant to Section 1132(a), Title 29, U.S. Code. The court observed: "The phrasing of § 502 [of ERISA] [Section 1132(a)] is instructive. Section 502(a) specifies which persons—participants, beneficiaries, fiduciaries, or the Secretary of Labor—may bring actions for particular kinds of relief. * * * *It does not purport to reach every question relating to plans covered by ERISA.*" (Emphasis added.)

Significantly, while noting that the breadth of Section 301 of the Labor Management Relations Act ("LMRA") was more extensive than the language of Section 1132(a), it nevertheless observed:

"But even under § 301 we have

---

[12] The continued vitality of decisions predating *Alessi* which found no ERISA preemption has not been questioned by the Supreme Court. See *Alessi, supra,* at 525; *Gould, Inc.* v. *Pension Benefits Guaranty Corp.* (S.D. N.Y. 1984), 589 F. Supp. 164, 167-168.

never intimated that any action merely relating to a contract within the coverage of § 301 arises exclusively under that section. For instance, a state battery suit growing out of a violent strike would not arise under § 301 simply because the strike may have been a violation of an employer-union contract." *Id.* at fn. 28.

Thus, even if one assumes, as does the majority, that the present action in tort is predicated upon breach of contract, that fact alone does not bring the action within the purview of the Section 1144(a) preemption clause, *Pilot Life Ins. Co.* v. *Dedeaux, supra,* notwithstanding.

It is therefore evident that ERISA has no application to an action: (1) predicated upon state common-law tort doctrines; (2) asserted against an employer and not a pension plan; (3) which does not presume to claim benefits under the plan; and (4) which does not rely upon the breach of a contract regulated by ERISA as the basis for the relief sought. ERISA is therefore wholly irrelevant to the case at bar.

### IV

Inasmuch as I believe that the common law of the state of Ohio governs the present action, there is ample evidence in the record to support the award of compensatory damages thereunder.

As mentioned previously, the present action involves a common-law action for misrepresentation against Carter-Jones. Appellants argue that, in order for the trial court to find that misrepresentation occurred, the following factors must be present:

"(a) A representation or concealment of a fact,

"(b) which is material to the transaction at hand,

"(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whe-

ther it is true or false that knowledge may be inferred,

"(d) with the intent of misleading another into relying on it,

"(e) justifiable reliance upon the representation or concealment, and

"(f) a resulting injury proximately caused by the reliance."

In support of their claim that no misrepresentation occurred, appellants assert that "Mr. Graham simply verified that the Ralyons were enrolled in the plan and stated the limits of the coverage. To infer anything further from his remarks is to read an intent to deceive that does not exist." How in good conscience can one claim that a statement that the plan would pay one hundred percent coverage for one hundred twenty days in a semi-private room does not convey to a person of ordinary intelligence that coverage will be provided? The trial court could have easily concluded that the statement previously quoted was intended to mislead the person hearing it. This is especially so when one considers that the person to whom it was directed, Karen Atkins, an insurance clerk with Richland Hospital, had seven and one-half years' experience handling insurance claims and clearly knew the difference between a commitment of coverage and a hedge!

It must be noted as well that knowledge of the falsity of the statement made is not a prerequisite to recover for misrepresentation. A statement made with reckless disregard of the truth or falsity thereof is sufficient to impose liability. Clearly it could be found that such recklessness was present given the fact that Graham had the plan in his possession at the time the representations relative to coverage were made.

### V

It is my further belief that the award of punitive damages by the trial

court was wholly proper. Prior decisions of this court have held that punitive damages will be "awarded in tort actions which involve fraud, malice, or insult." *Preston* v. *Murty* (1987), 32 Ohio St. 3d 334, 512 N.E. 2d 1174, 1175; *Roberts* v. *Mason* (1859), 10 Ohio St. 277. This exacting standard has been satisfied in the present case. The pattern of behavior exhibited by Carter-Jones presents a textbook case of malicious conduct.

Kenneth C. Ralyon began employment as a yard worker and truck driver with Carter-Jones in 1954. From 1954 to 1982, he was a member of Teamsters Union Local 348 and through such affiliation enjoyed certain employee benefits including medical and hospitalization coverage for which no payroll deductions were taken. On May 20, 1982, Carter-Jones declared itself an open shop and the Teamsters discontinued representation of Carter-Jones employees. Benefit coverage previously undertaken by the union was thereafter provided by the Carter Employee Welfare Plan Trust. The plan was administered by three trustees: Van Carter, Chairman of the Board of Carter-Jones, Cecil Smith, Manager of Operations for Carter-Jones and Vincent Graham, an insurance clerk in the employ of Carter-Jones. The actual scope of authority possessed by Graham was the processing of insurance claims.

The Carter Employee Welfare Plan Trust was essentially a self-insured entity to which employees contributed through payroll deductions and from which they looked for medical insurance coverage. To the extent that claims and the expenses of the Trust exceeded income from employee contributions, Carter-Jones supplied funds in the amount of the shortfall.

The coverage purchased by Kenneth Ralyon encompassed medical and hospital benefits for himself and his wife, Julia Ralyon. On October 10, 1983, Julia Ralyon was placed in Richland Hospital in Mansfield, Ohio and diagnosed as a schizophrenic reaction paranoid. The following day, Ken Ralyon traveled to Richland Hospital, signed admission papers and authorized Richland Hospital to verify with Carter-Jones that the treatment to be administered to Julia Ralyon was covered by the insurance plan. Karen Atkins, an insurance clerk with Richland Hospital, contacted Vincent Graham to verify that Kenneth Ralyon was an employee of Carter-Jones, that he possessed health insurance, that the health insurance extended to his wife, Julia, and that the care to be provided was covered under the plan. Atkins informed Graham that Richland was a private psychiatric hospital approved by Blue Cross and Medicare and accredited by the state of Ohio. Graham responded that the insurance plan would cover a semi-private room for one hundred twenty days at one hundred percent coverage and that all extra charges would be paid at one hundred percent. Atkins, an individual with seven and one-half years' experience as a professional benefit administrator, concluded from this conversation that the plan would pay for the care contemplated for Julia Ralyon.

Richland Hospital and Dr. Rodolfo S. Vocal thereupon provided the medical services required to treat Julia Ralyon who remained in the hospital for forty days. The charges for such treatment amounted to $9,459.50 for Richland Hospital and $2,115 for Dr. Vocal.

Following the treatment administered by Richland and Dr. Vocal, Kenneth Ralyon submitted a claim for medical coverage with Executive & Employee Benefit Plans, Inc. ("E & E"), the benefit plan administration service hired by Carter-Jones. E & E requested more information about Richland from Kenneth Ralyon. This infor-

mation was supplied to E & E which thereafter denied the claim. The denial of benefits was predicated upon the fact that Richland did not fall within the definition of "hospital" contained in the plan since it did not possess surgical facilities on its premises. Despite the definition contained in the plan and the description of facilities utilized by Richland contained in the industry publication The American Hospital Association Guide to the Health Care Field, it is apparent that at no time prior to treatment did Graham or E & E express to Kenneth Ralyon or Richland Hospital that the treatment would not be covered. Moreover, no copy of the benefits plan was ever provided to Ralyon.

During the pendency of the claims process, Graham indicated that he wrote a memo about the matter to Jerome D. Lesnick who was described as "someone higher up the ladder." In fact, Lesnick was not an officer of the Trust but was rather Secretary and/or Vice-President of Carter-Jones.

Despite these assurances, the Ralyons were never compensated for the expenses they incurred as a result of the misrepresentations of Carter-Jones. Carter-Jones continues to resist all attempts to require it to live up to its obligations—including the present litigation.

The conduct exhibited by Carter-Jones is not limited to its prejudgment behavior. The company continues to employ dilatory tactics, legal fictions and corporate sleight-of-hand in order to avoid payment of a valid judgment—tactics that the decision of the majority tends to reward.

Probably the most disturbing aspect of this appeal concerns the attempt by Carter-Jones to claim that joint and several liability should not be imposed upon it and the Carter Employee Welfare Plan Trust. It is undis-

puted that Carter-Jones was responsible for any shortfalls to the extent that claims and expenses of the Trust exceeded the income from employee contributions. If it is the intent of Carter-Jones to remain responsible for such shortfall, one must wonder why it is pursuing the issue of joint and several liability between the two entities. If payment is contemplated, why should it matter to Carter-Jones management whether the award is derived from the right pocket or the left? It is equally true that the decision to pay on claims was not ultimately decided by the trustees but by "someone higher up the ladder," to wit: Jerome Lesnick, Secretary and/or Vice-President of Carter-Jones. It appears that this decisional model has also been employed in order to defeat joint and several liability (i.e., to prevent Carter-Jones from having to pay on the claim). By attempting to limit recovery to the assets possessed by the Trust, Carter-Jones is, in effect, trying to limit its liability to whatever can be recovered therefrom and to escape liability for any contributions for the shortfall. In essence, Carter-Jones seeks to limit recovery to only those amounts that represent employee contributions to the Trust and to effectively foreclose any payment by Carter-Jones of damages resulting from the acts of its agents and employees.

Nevertheless, counsel for appellants maintain that Carter-Jones and the Carter Employee Welfare Plan Trust are separate, distinct and independent entities with adverse interests. The facts belie this assertion. The Trust is but the alter ego of Carter-Jones. Equally disconcerting is the fact that the argument is being advanced by counsel who represent both Carter-Jones and the Trust—a highly unusual arrangement which aroused the concern of both the common pleas court

during trial and this court during oral argument.

In reality there is no ethical dilemma faced by counsel for appellants with respect to representing both entities. The interests of both are identical and far from adverse. The Trust, by virtue of being controlled by Carter-Jones employees, has been and continues to be employed by Carter-Jones as a convenient device by which the latter may escape liability. To the extent that the Trust may be liable to Carter-Jones for indemnification, such fact should have no bearing on the cross-claim asserted against Carter-Jones by the Ralyons. The joint and several liability imposed upon Carter-Jones and the Trust by the trial court renders any discussion as to the relative responsibility of each purely academic. Consideration of the issue would be more appropriately presented in an action for contribution by Carter-Jones against the Trust.

However, with respect to the cross-claim asserted by the Ralyons against Carter-Jones, there is ample evidence to support the conclusion of the trial court that malice was present such as to justify an award of punitive damages and attorney fees. This case does not merely involve an honest dispute as to the terms of the benefit plan. The Ralyons were misled into believing that coverage existed when it did not. They relied on this misrepresentation to their detriment. Despite this reasonable reliance on the representation of an employee of Carter-Jones and the Trust, the appellants denied coverage. This was not a case where the parties were silent as to coverage. The Ralyons sought assurance, got that assurance, relied on it, and were harmed as a result.

Moreover, Carter-Jones, as a result of its liability for any shortfall in the Trust, clearly had a pecuniary interest in refusing benefits under the plan. Consequently, the trial court could have easily concluded that malice was a motivating factor in Carter-Jones' actions.

In a situation as has been presented by this case, punitive damages and attorney fees are justified. Otherwise, employers or insurers may seek to shirk a clear obligation with impunity knowing that their ultimate exposure to liability will not exceed amounts which they were duty-bound to pay in the first place.

It is further evident that the conduct displayed by Carter-Jones did not end with the judgment of the trial court. Its attempt to avoid joint and several liability and thereby transfer responsibility to a potentially empty shell—the assets of which it largely controls—is merely the latest of its efforts to avoid its responsibilities. This court should not let itself be used to perpetrate an injustice upon the appellees, such as to confer upon them a largely Pyrrhic victory.

DOUGLAS and H. BROWN, JJ., concur in the foregoing dissenting opinion.