RUBY SUMMERS, Adm'r of the Estate of James Summers, Deceased, Plaintiff-Appellant, v. UNITED STATES TOBACCO COMPANY *et al.,* Defendants-Appellees.

First District (1st Division)   No. 1—89—3098

Opinion filed May 28, 1991.

James J. McGraw and Anna Marek, both of Hanover Park, for appellant.

Glass, Hill, Dallmeyer & Roth, Ltd., of Northbrook (Michael M. Roth, of counsel), for appellee United States Tobacco Company.

Tribler & Orpett, P.C., of Chicago (D.J. Sartorio and Philip R. King, of counsel), for appellee Aetna Life & Casualty Company.

JUSTICE BUCKLEY delivered the opinion of the court:

Ruby Summers, as administrator of the estate of James Summers, deceased (plaintiff), filed a two-count complaint against defendants United States Tobacco Company (U.S. Tobacco) and Aetna Life & Casualty Company (Aetna) alleging that the termination of decedent's employment and health benefits were in violation of: (1) The Employment Retirement Investment Security Act of 1974 (ERISA) (29 U.S.C. §1001 *et seq.* (1988)); (2) the "bad faith" provision of the Illinois Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 767); and (3) various State common-law theories, including breach of contract and wrongful discharge. Pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619), the circuit court granted defendants' motions to dismiss plaintiff's complaint on Federal preemption and other grounds. We affirm.

The record reflects that plaintiff is the court-appointed administrator of the estate of her deceased husband, James Summers (the deceased). Prior to his death on June 11, 1987, the deceased had worked

as an electrician for U.S. Tobacco since January 6, 1986. As a condition of his employment, the deceased was required to join the International Brotherhood of Electrical Workers, No. 134, which, during the duration of the deceased's employment, was a party to a collective-bargaining agreement with U.S. Tobacco (the union agreement). This agreement governed the deceased's rights as to such matters as allowable sick days, health benefits, leaves of absence, termination of employment for "just cause," and grievance procedures to review terminations.

The deceased's absence from work began on January 16, 1987, and continued until his death. Under the union agreement, the deceased was entitled to and given a 30-day leave of absence without pay after his five allowable sick days were exhausted on January 22, 1987. After the initial 30-day period expired, and although not required by the union agreement, U.S. Tobacco extended the deceased's leave of absence status for two additional 30-day periods. On April 28, 1987, U.S. Tobacco removed the deceased from his leave of absence status and thereafter terminated him for "just cause" due to excessive absenteeism. The deceased never instituted any grievance procedure following his termination and elected to convert his group medical insurance to an individual policy.

Count I of plaintiff's complaint, brought against U.S. Tobacco, alleges that while employed, the deceased had received better than average job evaluations. Plaintiff alleges that on or about April 10, 1987, U.S. Tobacco learned that the deceased was totally disabled, but nevertheless terminated the deceased due to his illness on May 1, 1987, in violation of section 510 of ERISA (29 U.S.C. §1140 (1988)), and cancelled his major medical insurance policy with Aetna. Plaintiff alleges that U.S. Tobacco personnel advised the deceased to get Aetna's converted coverage as a terminated employee so that his bills would get paid, but that this coverage proved insufficient by over $50,000. As a proximate result of U.S. Tobacco's conduct, plaintiff alleges that the deceased and his family suffered loss of wages, benefits, severe emotional distress and humiliation.

Count II of the complaint, brought against both U.S. Tobacco and Aetna, alleges that on or about the latter part of 1986, U.S. Tobacco entered into an employment agreement with the deceased in which he was entitled to major medical coverage, vacation pay, profit sharing, sick pay and other benefits. Plaintiff further alleges that on May 1, 1987, the deceased was wrongfully dismissed without a proper hearing; that his dismissal was unwarranted and unjust since his illness was to be covered and was so covered up until the time it was learned

the deceased was terminated by U.S. Tobacco; and that this cancellation was without cause and in violation of section 510 of ERISA and section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 767). Count II concludes by alleging that as a result of U.S. Tobacco's and Aetna's breaches of employment and major medical coverage contracts, the deceased has suffered lost wages, vacation pay, health and welfare premiums that were once paid, unpaid medical bills, mental anguish and distress due to harassment by various medical professionals.

U.S. Tobacco's motion to dismiss interpreted plaintiff's suit as setting forth a theory of "wrongful discharge." Under this interpretation, U.S. Tobacco contended that its decisions relating to (1) placing the deceased on a leave of absence status, (2) removing him from that status, and (3) terminating him for "just cause" based on his excessive absenteeism were all consistent with the union agreement. Moreover, U.S. Tobacco contended that to the extent the deceased's discharge was inconsistent with the union agreement, section 301 of the Labor Management Relations Act of 1947 (the LMRA) (29 U.S.C. §185 (1988)) required dismissal because the LMRA either preempted the deceased's common-law "wrongful discharge" claim or barred the claim due to the deceased's failure to institute any of the union agreement's grievance procedures.

On January 10, 1990, the circuit court agreed with U.S. Tobacco's arguments. It concluded that plaintiff's complaint alleged nothing more than a violation of the "just cause" provision of the collective-bargaining agreement. Relying on *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904, and *Perkins v. Pepsi-Cola General Bottlers, Inc.* (1987), 158 Ill. App. 3d 893, 511 N.E.2d 901, the court held that plaintiff's claim was either preempted by Federal labor law or was governed by section 301 of the LMRA. The court noted that under the LMRA, the deceased was required to exhaust the union agreement's administrative remedies prior to suit or have an adequate excuse for not doing so. Because the deceased's illness did not excuse his failure to exhaust those remedies, the court dismissed plaintiff's claim against U.S. Tobacco.

As for Aetna's motion to dismiss plaintiff's complaint, Aetna contended that ERISA governed U.S. Tobacco's plan and, consequently, the circuit court lacked subject-matter jurisdiction over any alleged ERISA violation because jurisdiction over such actions rests exclusively with the Federal courts. Aetna further argued that as for plaintiff's Illinois statutory and common-law claims, ERISA also acted to preempt them.

In its January 1990 order, the circuit court agreed with Aetna and dismissed plaintiff's section 155 claim on the ground that the claim was preempted under ERISA and that there was no vexatious refusal to pay. The court further found that Aetna had committed no wrongful conduct because under the terms of Aetna's claims administration agreement with U.S. Tobacco, Aetna's obligation to pay benefits to the deceased expired when U.S. Tobacco severed its employment relationship with the deceased.

On appeal, plaintiff contends: (1) the circuit court had subject-matter jurisdiction over its ERISA claim against both defendants; (2) ERISA does not preempt its section 155 claim against Aetna; (3) the ERISA claim sufficiently stated a cause of action; and (4) the deceased's failure to exhaust the internal remedies of the collective-bargaining agreement does not preclude plaintiff's suit under ERISA because such exhaustion was excused under the circumstances of this case. Plaintiff also seeks, for the first time, the opportunity to amend her complaint if this court determines that dismissal was otherwise proper.

The first issue we address is whether the circuit court had subject-matter jurisdiction over plaintiff's ERISA claim filed against U.S. Tobacco and Aetna. We assume, as the parties have, that ERISA governs U.S. Tobacco's benefits plan. Title I of ERISA applies to an employee benefit plan established or maintained by any employer that is engaged in commerce or in any industry or activity affecting commerce. (29 U.S.C. §1003(a) (1988).) Employee benefit plans for purposes of Title I of ERISA include employee welfare benefit plans, employee pension benefit plans, and plans that are both. (29 U.S.C. §1002(3) (1988).) "Employee welfare benefit plans" are defined in part as "any plan, fund, or program *** maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." (29 U.S.C. §1002(1) (1988).) Given ERISA's broad scope, we continue under the assumption that U.S. Tobacco's plan is governed by ERISA.

Plaintiff's complaint purports to set forth a cause of action based on section 510 of ERISA (29 U.S.C. §1140 (1988)), which provides in part:

> "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary *** for the purpose of interfering with the attainment of any right to which such participant may become enti-

tled under the plan \*\*\*. \*\*\* The provisions of section 1132 of this title shall be applicable in the enforcement of this section."

Section 1132, referred to above, is ERISA's civil enforcement provision. While section 1132 has numerous civil enforcement provisions, only two are potentially implicated in this appeal: section 1132(a)(1)(B) and section 1132(a)(3). Section 1132(a) provides in part:

"A civil action may be brought—

(1) by a participant or beneficiary—

\*\*\*

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

\*\*\*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of this subchapter of the terms of the plan." 29 U.S.C. §1132(a) (1988).

■ The importance of determining whether plaintiff's complaint sets forth a cause of action under section 1132(a)(1)(B) or section 1132(a)(3) impacts directly on the issue of State court subject-matter jurisdiction. As expressed in section 1132(e)(1), State court jurisdiction only exists with respect to actions brought under 1132(a)(1)(B):

"Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under subsection (a)(1)(B) of this section." 29 U.S.C. §1132(e)(1) (1988).

Illinois courts as well as others have recognized from ERISA's express language that section 1132(a)(1)(B) actions and those arising under section 1132(a)(3) are distinct for subject-matter jurisdiction purposes; only those actions brought by a participant or beneficiary pursuant to section 1132(a)(1)(B) may be brought in State courts. (*Rizzo v. Travelers Insurance Co.* (1989), 193 Ill. App. 3d 67, 549 N.E.2d 810; *Arnold v. Babcock & Wilcox Co.* (1987), 154 Ill. App. 3d 863, 507 N.E.2d 218, *aff'd* (1988), 123 Ill. 2d 67, 525 N.E.2d 59; *Duffy v. Brannen* (1987), 148 Vt. 75, 529 A.2d 643; *Imler v. Southwestern*

*Bell Telephone Co.* (1982), 8 Kan. App. 2d 71, 650 P.2d 712.) These courts note that Congress' rationale for limiting State court jurisdiction to section 1132(a)(1)(B) actions is Congress' recognition that these actions call upon courts to interpret the terms of a plan by applying general principles of contract law, an area with which they have substantial expertise. On the other hand, Congress left violations of ERISA, embraced by the remaining provisions of section 1132(a) (*Kross v. Western Electric Co.* (7th Cir. 1983), 701 F.2d 1238 (section 1140 violation); *Witkowski v. St. Anne's Hospital, Inc.* (1983), 113 Ill. App. 3d 745, 447 N.E.2d 1016 (same); *Pierce v. PJG & Associates, Inc.* (1984), 128 Ill. App. 3d 471, 470 N.E.2d 1096 (breach of fiduciary duty under section 1104)), to the exclusive jurisdiction of Federal courts in order to protect employers and fiduciaries from the threat of conflicting and inconsistent State and local regulations. *Duffy*, 148 Vt. at 84, 529 A.2d at 648.

In this case, plaintiff's complaint explicitly cites section 1140 as the ERISA provision that U.S. Tobacco and Aetna violated. We believe that while plaintiff could have better expressed this action, it sufficiently sets forth allegations to support a pretextual discharge. (See *Kross*, 701 F.2d at 1242-43.) However, as expressed above, the circuit court lacked subject-matter jurisdiction to hear the section 1140 action because such actions belong exclusively in Federal courts. Accordingly, we affirm the circuit court's dismissal of plaintiff's section 1140 action against each defendant.

In anticipation of our conclusion on the jurisdiction issue, plaintiff requests for the first time a remand by this court to permit an amendment of her complaint in order to plead a section 1132(a)(1)(B) cause of action. As indicated, State courts have concurrent jurisdiction over these actions. Aetna responds that because plaintiff had every opportunity to amend her complaint prior to appeal, her request to amend at this stage of the proceedings comes too late. We agree. Plaintiff elected to stand on her complaint and asked the court below only to deny defendants' motions to dismiss. Even in the face of defendants' motions, plaintiff elected to not amend her complaint to assert a section 1132(a)(1)(B) cause of action. We believe that plaintiff has waived her request to amend. See *Criscione v. Sears, Roebuck & Co.* (1978), 66 Ill. App. 3d 664, 384 N.E.2d 91.

The second issue we address is whether ERISA preempts plaintiff's statutory and common-law causes of actions. Section 514(a) of ERISA outlines the preemptive effect of ERISA on State laws. It provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan."

(Emphasis added.) (29 U.S.C. §1144(a) (1988).) For purposes of section 514(a), ERISA defines "State law" to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." (29 U.S.C. §1144(c)(1) (1988).) The broad preemptive language set forth in section 514(a) is limited by a "savings" clause which deals with State regulation of insurance companies. This savings clause provides in relevant part that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. §1144(b)(2)(A) (1988).

Recently, the United States Supreme Court reiterated the broad preemptive effect that ERISA has on State laws that "relate to" employee benefit plans. In *Ingersoll-Rand Co. v. McClendon* (1990), 498 U.S. 133, 112 L. Ed. 2d 474, 111 S. Ct. 478, the Court addressed the issue of whether ERISA preempted a State common-law action which alleged that an employer pretextually discharged its employee in order to avoid contributing to the employee's pension fund. In concluding that ERISA preempted the action, the Court noted that Congress' intent, as shown by the language Congress selected, was to enact a broad preemption provision:

> "The key to §514(a) is found in the words 'relate to.' Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause 'applicable only to state laws relating to the specific subjects covered by ERISA.' [Citation.] Moreover, to underscore its intent that §514(a) be expansively applied, Congress used equally broad language in defining the 'State law' that would be preempted." *McClendon*, 498 U.S. at 138-39, 112 L. Ed. 2d at 483, 111 S. Ct. at 482-83.

Illinois courts have recognized the broad, preemptive effect of ERISA. In *Witkowski v. St. Anne's Hospital, Inc.* (1983), 113 Ill. App. 3d 745, 447 N.E.2d 1016, the court found that ERISA preempted claims under Illinois common law predicated upon contract and retaliatory discharge, where plaintiff alleged that she was discharged to prevent her collection of long-term disability benefits. Similarly, in *Rizzo v. Travelers Insurance Co.* (1989), 193 Ill. App. 3d 67, 549 N.E.2d 810, the court found that ERISA preempted Illinois common-law claims predicated on negligence and contract where the plaintiff-beneficiary alleged that she was deprived of benefits under a group life insurance policy issued to her deceased husband.

■ In this case, the gravamen of plaintiff's complaint is that her husband was terminated in order to cease the flow of health-care ben-

efits to a man who was extremely ill. Such a claim, to the extent it relies on State common law for its generation, is preempted under ERISA. Similarly, plaintiff's allegations of breach of contract or wrongful discharge, as they relate to U.S. Tobacco's health plan, are preempted.

As for plaintiff's allegation that Aetna violated section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 767), we believe that *Pilot Life Insurance Co. v. Dedeaux* (1987), 481 U.S. 41, 95 L. Ed. 2d 39, 107 S. Ct. 1549, is dispositive. In *Pilot Life*, the Court found that ERISA preempted State common-law tort and contract actions asserting the improper processing of claims for benefits under an employee benefit plan. Significantly, the court also rejected the argument that the "savings clause" saved from preemption plaintiff's tort claim that was predicated upon a "bad faith" processing of an insurance benefit claim. While an argument can be advanced that *Pilot Life* is distinguishable on the ground that plaintiff's "bad faith" claim here is statutory in nature, as opposed to the common-law claim in *Pilot Life, Pilot Life's strong* emphasis on ERISA's broad preemptive effect would require a rejection of such distinction. As the Court stated:

> "In sum, the detailed provisions of [section 1132(a)] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. 'The six carefully integrated civil enforcement provisions found in [section 1132(a)] of the statute as finally enacted ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'" (Emphasis in original.) *Pilot Life*, 481 U.S. at 54, 95 L. Ed. 2d at 52, 107 S. Ct. at 1556, quoting *Massachusetts Mutual Life Insurance Co. v. Russell* (1985), 473 U.S. 134, 146, 87 L. Ed. 2d 96, 106, 105 S. Ct. 3085, 3092.

Aside from *Pilot Life*, at least one court has addressed ERISA's preemptive effect upon a section 155 action. In *Buehler Ltd. v. Home Life Insurance Co.* (N.D. Ill. 1989), 722 F. Supp. 1554, the plaintiff-beneficiary alleged a vexatious and unreasonable delay in violation of section 155. Plaintiff alleged this violation in connection with

the settling of his claim as a beneficiary to certain life insurance benefits that were provided under a group life insurance policy issued to his employee-brother. The *Buehler* court, in a thorough analysis, relied on *Pilot Life* to conclude that ERISA preempted plaintiff's section 155 claim and was not saved by ERISA's "savings" clause. (See also *Gadsby v. Health Insurance Administration, Inc.* (1988), 168 Ill. App. 3d 460, 522 N.E.2d 865; *Russo v. Boland* (1982), 103 Ill. App. 3d 905, 431 N.E.2d 1294 (holding that ERISA preempted claims alleging violations of the Illinois Insurance Code).) Other courts have also found that ERISA preempts similar bad-faith statutes of other States. (See *Kanne v. Connecticut General Life Insurance Co.* (9th Cir. 1988), 867 F.2d 489, *cert. denied* (1989), 492 U.S. 906, 106 L. Ed. 2d 566, 109 S. Ct. 3216 (California); *In re Life Insurance Company of North America* (8th Cir. 1988), 857 F.2d 1190 (Missouri); *Anschultz v. Connecticut General Life Insurance Co.* (11th Cir. 1988), 850 F.2d 1467 (Florida); see also Chemers & Franco, *The Preemption of State Claims Under ERISA*, 78 Ill. B.J. 550 (Nov. 1990); Bishop & Denney, *Hello ERISA, Good-bye Bad Faith: Federal Pre-emption of DTPA, Insurance Code, & Common Law Bad Faith Claims*, 41 Baylor L. Rev. 267 (1989); Klerin, Rosen & Stedman, *Pilot Life's Dramatic Impact— The Supreme Court Revolutionizes Insurance Bad Faith Law*, L.A. Law. Oct. 1987, at 37.) Accordingly, given ERISA's broad preemptive effect on State law, whether that law be statutory or common law, we find that plaintiff's statutory bad-faith claim is preempted.

■ Finally, we address what impact Federal labor law has on plaintiff's complaint. Section 301 of the LMRA states:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce *** may be brought in any district court of the United States having jurisdiction of the parties ***." (29 U.S.C. §185(a) (1988).)

In *Pilot Life*, the Court reviewed its prior rulings which had addressed section 301's broad preemptive effect:

> "Section 301 preempts any 'state-law claim [whose resolution] is substantially dependent upon the analysis of the terms of an agreement made between the parties in a labor contract.' [Citation.] *** In *Lucas Flour* the Court found that '[t]he dimensions of §301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute.' [Citation.] '[I]n enacting §301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules.' [Citation.] Indeed, for purposes of determin-

ing federal jurisdiction, this Court has singled out *** the LMRA as having 'pre-emptive force ... so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law.' " *Pilot Life*, 481 U.S. at 55-56, 95 L. Ed. 2d at 53, 107 S. Ct. at 1557.

In this case, to the extent plaintiff's complaint can be read as alleging a State-law cause of action for U.S. Tobacco's violation of its employment agreement with the deceased, such action is preempted. (*Mitchell v. Pepsi-Cola Bottlers, Inc.* (7th Cir. 1985), 772 F.2d 342, *cert. denied* (1986), 475 U.S. 1047, 89 L. Ed. 2d 575, 106 S. Ct. 1266; *Perkins v. Pepsi-Cola General Bottlers, Inc.* (1987), 158 Ill. App. 3d 893, 511 N.E.2d 901.) Moreover, because plaintiff has failed to present an adequate excuse for not instituting grievance procedures within the union agreement, her action was properly dismissed. *Mitchell*, 772 F.2d at 347.

For the foregoing reasons, we affirm the circuit court's dismissal of plaintiff's complaint with prejudice.

Affirmed.

MANNING, P.J., and O'CONNOR, J., concur.