**PARIC CORP., Plaintiff/Respondent,**

v.

**Michael P. MURPHY, Defendant/Appellant.**

**No. 66437.**

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 1, 1995.

Donald S. Hilleary, Donald S. Hilleary, P.C., Clayton, for appellant.

Charles A. Seigel, II, Seigel & Wolff, Clayton, for respondent.

CRANE, Presiding Judge.

Defendant, Michael P. Murphy, filed an amended counterclaim against Paric Corporation (Paric) requesting delivery of certain documents relating to Paric's profit-sharing plan (Count I) and recovery of benefits under the profit-sharing plan (Count II). The trial court dismissed Count I and entered judgment in favor of Paric on Count II because Murphy failed to provide the consent and

election forms necessary to receive benefits prior to age sixty-five in a form other than a Qualified Joint and Survivor Annuity (QJSA). It ordered each party to pay its own costs and attorney's fees. Murphy appeals. We affirm.

Paric employed Murphy from September, 1981 to April 15, 1991. He served as controller, vice president, chief financial officer, and as a board member and participated in the company's profit-sharing plan (the Plan). Paric was the Plan Administrator. Murphy helped set up the Plan, and worked with outside counsel on amendments to the Plan, and was responsible for all aspects of the administration of the Plan.

At the time of his termination, the December 31, 1990 amendment and restatement of the Plan (the 1990 Plan Document) was in effect. Section 9.3 (Time of Payment) provided that, in the event a participant incurred termination before the first day of the seventh month of a Plan Year [1], the payment of benefits subject to § 9.4 [2] would begin within 120 days after the last day of that Plan Year coincident with the date the participant terminates employment. Section 9.3 also provided that, notwithstanding the time payment was to commence, if a participant at the time of first distribution had not yet attained the normal retirement age [3] and his vested benefits exceeded $3,500, the participant and the participant's spouse must consent in writing on a form acceptable to the Plan Administrator before any portion may be distributed to the participant.

Section 9.5 provided that a participant who had a spouse would receive his or her benefit in the form of a QJSA. The participant and the participant's spouse could elect a different form of payment if they did so in a signed writing on a form acceptable to the Plan Administrator.

Under § 9.8 (Accounts of Former Employees) any amount credited to the account of a participant after termination was to be adjusted in accordance with Article VI as of each Valuation Date [4] following termination until the account distributed in full. Section 6.3(B) of Article VI provided that each year after the Valuation Date, each participant's account was to be adjusted upward or downward, pro-rata, so that the total of all of the Plan participants' accounts equalled the fair market value of the Plan's trust assets.

At the time of termination Murphy was fully vested, was married, and was thirty-nine years old. Murphy received a 1991 annual statement of retirement plan benefits for 1991 which stated his interest in the Plan's assets was $110,600.14 on December 31, 1991. In April, 1992 Murphy telephoned Paric's controller who told him that the benefits were not payable until June, 1993.

On April 30, 1992 Paric amended the Plan retroactive to October 1, 1989 (the 1992 Plan Document). Section 9.3 was amended to provide a different calculation of the date on which a terminated participant would be entitled to benefits. Under § 9.3 of the 1992 Plan Document, a participant would be entitled to payment of benefits no later than six months following the last day in the Plan Year in which he incurs a Break–In–Service.[5]

1. As of January 1, 1991 a Plan Year is defined as a calendar year.

2. Section 9.4 (Latest Time of Payment) provided that absent a written election by the participant, the latest date on which payments must commence shall be 60 days after the close of the Plan Year in which the latest of the following events occurs: 1) participant's attainment of the normal retirement age (defined as 65); 2) participant's termination of employment; or 3) the elapse of ten years since participant's commencement of participation in the Plan.

3. Normal retirement age under the Plan is 65.

4. The Valuation Date would be the last business day of a Plan Year and each interim date on

which the trustee in his discretion values the trust funds.

5. A Break–In–Service is defined as any Plan Year in which the employee has not completed more than 500 hours of service. Thus, as applied to Murphy, if he and his spouse had filed the proper consent and election forms, under § 9.3 of the 1990 Plan Document, payment of his benefits would have commenced on April 29, 1992, 120 days after his anniversary date. But, under the 1992 Plan Document, Murphy's Break–In–Service did not occur until 1992; if the 1992 Plan Document controlled, he would not have been entitled to distribution of his benefits until June 30, 1993.

The 1992 amendments did not change the provisions requiring written consent and election to receive payments prior to the normal retirement age or to receive the payments in a form other than a QJSA. Likewise, the amendments did not alter § 9.8 which provided that undistributed benefits of former employees would be adjusted on each succeeding Valuation Date until the full amount is distributed.

Murphy did not provide Paric with a written election and spousal consent to receive his benefits prior to the normal retirement age. In addition Murphy did not supply the necessary written election to receive his payments in a form other than a QJSA. He did not supply the spousal waiver of a QJSA until trial. At trial Murphy admitted that he knew the election and consent forms were necessary for distribution and that he did not sign or present the required forms. Further, Murphy did not make a claim for benefits or pursue the appeal procedure provided in the Plan.

On January 26, 1993 Murphy filed his amended counterclaim in the underlying action seeking relief under 29 U.S.C. § 1132(a)(1)(B). In Count I he requested enforcement of rights under the terms of the Plan to be provided with certain Plan-related documents and attorney's fees. In Count II he sought recovery of benefits claimed due in the amount of $110,000 together with pre-judgment interest, attorney's fees and costs. After a bench trial, the trial court entered its Order and Judgment along with Findings of Fact and Conclusions of Law. The court dismissed Count I as moot, finding that Murphy had received all of the requested documents by July, 1993. The court entered judgment for Paric on Count II, concluding that because Murphy had not submitted the requisite election and consent forms, Paric could not distribute Murphy's benefits. The court ordered each party to pay its own costs and attorney's fees.

On appeal Murphy challenges the dismissal of Count I and raises several claims of error relating to the judgment entered on Count II. He also challenges the denial of attorney's fees and prejudgment interest.

## COUNT I

█ Murphy argues that the trial court erred in dismissing Count I of his counterclaim as moot. Murphy asserts that he incurred attorney's fees in filing the counterclaim to compel production of Plan documents and that, because his claim for attorney's fees in Count I was still pending, the trial court was required to resolve that claim. Murphy's attorney submitted an affidavit to the trial court showing attorney's fees in the amount of $10,985.21 incurred on all matters involving the counterclaim through the first day of trial. In a separate paragraph of its Order and Judgment, the trial court ordered each party to pay its own attorney's fees. Accordingly, the trial court did resolve the claim for attorney's fees and did not err in dismissing Count I on the basis Murphy claims.

## COUNT II

Count II was denominated "Suit to Recover Benefits." In the prayer for relief Murphy sought payment of benefits which he claimed were due him, together with prejudgment interest, attorney's fees and costs. The trial court found that Murphy was not entitled to the payment of any benefits because he had not made a written election to receive distribution of the benefits prior to normal retirement age in a form other than a QJSA.

### 1) *Consent and Election Forms*

█ Murphy asserts the trial court erred in concluding that his failure to submit the consent and election forms precluded his recovery. He argues that the Employee Retirement Income Security Act (ERISA) does not require the forms as a prerequisite to the determination of benefits and that the submission of such forms would have been a useless act because the Plan Administrator concluded Murphy was not entitled to benefits until 1993.

ERISA requires that a plan offer a QJSA to its participants. 29 U.S.C. § 1055(a)(1)(1988). A plan must provide that a participant may elect to receive his or her plan benefits in another form of payment. 29 U.S.C. § 1055(c)(1)(1988). A plan must

also provide that participant's spouse consent in writing to waive the automatic QJSA form of payment. 29 U.S.C. § 1055(c)(2)(A)(1988). To receive the present value of the QJSA, the participant and the participant's spouse must consent in writing to such distribution if the QJSA's present value exceeds $3,500. 29 U.S.C. § 1055(g)(2)(1988). In order for a pension plan trust to be a qualified trust and therefore receive certain tax advantages under 26 U.S.C. § 401 (1988 & Supp. V 1993) et seq., the plan must require a participant with a present value of a nonforfeitable accrued benefit greater than $3,500 to consent prior to distribution. 26 U.S.C. § 411(a)(11)(1988).

ERISA also provides that, unless the participant elects otherwise, payments of plan benefits shall begin not later than sixty days after the close of the plan year in which the latest of the following occurs: the participant reaches sixty-five or the normal retirement age of the plan; the tenth anniversary of the participant's commencing service; or the participant's termination of service with employer. 29 U.S.C. § 1056(a)(1988 & Supp. V 1993).

Prior to filing his counterclaim, Murphy did not supply the election and spousal waiver forms necessary to receive the payments in a form other than a QJSA, nor did he provide a written election to receive his benefits prior to the normal retirement age. These forms were necessary to disburse benefits to Murphy prior to normal retirement age and in a form other than a QJSA. The trial court could not enter a judgment awarding Murphy an amount of benefits without them. Murphy argues that the trial court should have resolved the amount which would have been due. Even if we set aside the question of whether the trial court could resolve this hypothetical question, the allegations of Count II did not support and the prayer did not request this relief.

■ Murphy claims it would have been futile to file the forms because his claim would have been denied. In seeking to enforce a plan's terms, a participant must exhaust the administrative remedies provided by the plan before seeking judicial relief. *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3rd Cir.1990), *cert. denied*, 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991). A participant is exempted from the exhaustion requirement where resort to the plan procedures would have been futile. *Id.*; *see Smith v. Blue Cross & Blue Shield United*, 959 F.2d 655, 659 (7th Cir.1992). To meet the futility exception, the participant must show that denial through the plan's appeal procedures is certain. *Smith*, 959 F.2d at 659.[6]

■ Thus, futility can be a defense to a claim of failure to exhaust administrative remedies. However, it does not and cannot excuse a participant from filing forms required by ERISA and the Plan to obtain a particular distribution; nor does the defense allow a court to grant relief which is predicated upon the filing of those forms. The existence of a dispute over when Murphy would be entitled to benefits if he filed the election and consent forms did not relieve Murphy of his obligation to file the election and consent forms to qualify for distribution.

## 2) *Date of Entitlement to Benefits*

■ Murphy next argues the trial court erred in including the following underlined portion in its first Conclusion of Law:

1) The 1992 Plan Document states that the rights and benefits, if any, of an employee who retired or terminated employment prior to the effective date of any particular amendment shall be determined pursuant to the provisions of the Plan as in effect on the date of termination of employment, except as otherwise specifically provided in the Plan. Accordingly, *except as otherwise specifically provided in the 1992 Plan Document*, the 1990 Plan Document determines the rights and benefits of defendant Murphy who retired or terminated prior to the effective date of the 1992 Plan Document.

---

**6.** Article XII of both the 1990 and 1992 Plan documents provided a claim and review procedure. Murphy admitted that he never filed a claim under the Plan. Murphy testified at trial that he did not "see the point of following" the claims procedure provided in the Plan because he "had already been told when Paric intended to pay [his] benefits."

Murphy argues that the court applied the underlined phrase to erroneously hold Murphy was not entitled to benefits on April 29, 1992, the date Murphy contended the benefits were payable. This argument has no merit. If Murphy was entitled to payment of benefits on April 29, 1992, he was only entitled to that payment if he filed the necessary consent and election forms. Until he filed the forms, he was not entitled to payment prior to reaching age sixty-five.

The trial court recognized this in its subsequent conclusions of law which found the issue of when Murphy's benefits were first payable was irrelevant:

> 3) Nevertheless, the Court finds that the issue of when defendant Murphy's benefits first became distributable is irrelevant because under both the 1990 Plan Document and the 1992 Plan Document a pre-requisite to the payment of any Plan benefits in any form is the written election by Murphy to receive a distribution prior to normal retirement age and to receive the benefit in a form other than a Qualified Joint and Survivor Annuity and Murphy's spouse's consent to these elections.
>
> 4) The Court finds that since all of the requisite consent and election forms have not been submitted to the Plan Administrator by Murphy and his spouse, the Plan Administrator is precluded under the terms of the Plan from making any distribution of Murphy's benefits in any form.

Because the claimed error did not materially affect the merits of the trial court proceeding, the claimed error is not an error which requires reversal. Rule 84.13(b); *see also Nachtweih v. Maravilla*, 861 S.W.2d 164, 169 (Mo.App.1993).

### 3) *Good Faith Revaluation*

■ Murphy contends the trial court erred when it found that the trustees acted in good faith "in revaluing and reducing the value of the Plan assets in April or May of 1993, and making said valuation retroactive to December 1992."

The challenged conclusion of law provides as follows:

> 6) As for the value of Murphy's pro rata interest in the Plan assets, this Court finds

that the Trustees and Plan Administrator acted in good faith in the revaluation of the Enterprise bank stock which caused an increase in the reported value of Murphy's benefits and the revaluation of the New England Pension Properties III investment which caused a decrease in the reported value of Murphy's pro rata interest.

This conclusion is unnecessary to the judgment because the relief sought was recovery of benefits which was denied. Whether the trustees acted in good faith in revaluing the assets while they were still invested with the Plan is not an issue which materially affects the merits of the trial court proceeding. Even if the conclusion is erroneous, it does not require reversal. Rule 84.13(b); *see also Nachtweih*, 861 S.W.2d at 169.

### 4) *Missouri Cases*

■ Murphy argues the trial court erred in citing common law contract cases discussing conditions precedent in support of its judgment. He argues the case was controlled by ERISA. This argument has no merit. In the first place, Murphy sought relief under 29 U.S.C. § 1132(a)(1)(B)(1988). State courts have concurrent jurisdiction with the federal district courts over actions brought under § 1132(a)(1)(B). 29 U.S.C. § 1132(e)(Supp. V 1993). "Concurrent jurisdiction is vested in the state courts only with respect to a civil action commenced by a participant or beneficiary seeking to recover or clarify rights to benefits 'under the terms of the plan', or to enforce rights 'under the terms of the plan.'" *Duffy v. Brannen*, 148 Vt. 75, 529 A.2d 643, 648 (1987). *See also Summers v. U.S. Tobacco*, 214 Ill.App.3d 878, 158 Ill.Dec. 412, 416, 574 N.E.2d 206, 210 (1991) and cases cited therein. Congress limited state court jurisdiction to § 1132(a)(1)(B) actions because these actions call upon state courts to interpret the terms of a plan by applying general contract law to plan terms, an area in which state courts have "substantial expertise." *Summers*, 158 Ill.Dec. at 416–17, 574 N.E.2d at 210–11; *Duffy*, 529 A.2d at 648.

Further, irrespective of whether the cases cited by the trial court properly supported its judgment, the trial court's judgment will not

be set aside if the result is correct. *Graue v. Missouri Prop. Ins. Placement Facility,* 847 S.W.2d 779, 782 (Mo. banc 1993); *McDermott v. Burpo,* 663 S.W.2d 256, 263 (Mo.App.1983).

*ATTORNEY'S FEES*

Murphy claims the trial court erred in denying his request for prejudgment interest and attorney's fees. Chapter 29 U.S.C. § 1132(g)(1988) permits the trial court in its discretion to allow a reasonable attorney's fee and costs to either party. In this case the trial court ordered that costs be apportioned between the parties equally and that each party pay its own attorney's fees. We do not find this award of attorney's fees to be an abuse of discretion. Since no judgment was awarded in Murphy's favor, there is no basis for an award of prejudgment interest.

The judgment of the trial court is affirmed. Murphy's motion for attorney's fees filed with this court is denied.

CRANDALL and DOWD, JJ., concur.