**Paul M. HARMOND, Plaintiff,**

v.

**TEAMSTERS JOINT COUNCIL NO. 83 OF VIRGINIA HEALTH AND WELFARE FUND, Defendant.**

Civ. A. No. 91–475–N.

United States District Court, E.D. Virginia, Norfolk Division.

July 30, 1992.

William D. Breit, Norfolk, Va., for plaintiff.

F. William Kirby, Jr., Richmond, Va., for defendant.

ORDER

KELLAM, District Judge.

This action was initiated by the plaintiff under the civil enforcement provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B). Both parties have moved for summary judgment. By order entered on February 21, 1992, Senior United States District Judge John A. MacKenzie designated Magistrate Judge William T. Prince, pursuant to 28 U.S.C. § 636(b)(1)(B), to conduct such hearings as necessary to submit to a judge of this court a report and recommendation for disposition by that judge of the cross-motions for summary judgment. Hearings were held on February 24 and April 30, 1992, and the magistrate judge filed his report on June 30, 1992. Because plaintiff has objected to the findings and recommendation of the magistrate judge, this court will review the relevant facts and conclusions *de novo*.

In May 1989, plaintiff Paul M. Harmond was involved in an automobile accident with an uninsured motorist in which he was severely injured. Plaintiff is an individual participant in the defendant, Teamsters Joint Council No. 83 of Virginia Health and Welfare Fund (Welfare Fund). The purpose of the Welfare Fund is to provide health and welfare benefits for its participants and beneficiaries. As a participant in the Welfare Fund plan, plaintiff submitted to the Fund a total of $66,757.49 in claims for medical treatment resulting from his injuries. Plaintiff has received payment from his own automobile insurance company for $100,000 under his uninsured motorist coverage. To date, the Fund has not made any payment to plaintiff. The language in the Welfare Fund plan documents, § 8.6 entitled *SUBROGATION*, is as follows:

A. *Fund's Subrogation Rights.* In the event the Fund pays benefits under

any Plan to any Employee, Dependent, or assignee for injuries, expenses, or loss caused by the negligence or wrongful act of a third party, the Fund shall be subrogated for the amount of such payment to all rights of the Employee or Dependent against any person, firm, corporation, or other entity as respects such injuries, expenses, or loss.

B. *Assignment of Claim.* Prior to payment by the Fund to an Employee, Dependent, or assignee of benefits for injuries, expenses, or loss caused by the wrongful act or negligence of a third party, the Employee or Dependent shall execute a written assignment to the Fund of all rights, claims, interest, or causes of action which the Employee or Dependent has against such third party to the extent of such benefits, and further, the Employee or Dependent shall authorize the Fund at the Fund's expense to sue, compromise, or settle in his name or otherwise all such rights, claims, interest, or causes of action to the extent of benefits paid. In addition, the Employee or Dependent shall covenant that he has not discharged or released any such right, claim, interest, or cause of action against any third party.

C. *Prosecution of Claim.* Pursuant to directions received from the Fund, the Employee or dependent [sic] shall assist the Fund in prosecuting any rights, interest, claims or causes of action that have been assigned to the Fund against the third party. Such cooperation shall include, if requested by the Fund, the institution of a legal proceeding against the third party.

(Ex. A to Defendant's Motion for Summary Judgment, § 8.6, at 128). Plaintiff, after submitting his claims and in order to exhaust his administrative remedies as required by the plan, also completed a subrogation agreement which complements the language in Section A and states in part:

1. I/we assign, transfer and subrogate to the Plan, to the extent of the benefits paid, all rights, claims, interest and causes of action that I/we may have against any person, firm, corporation or other entity in regard to such injuries, expenses or loss.

2. I/we agree to reimburse the Plan in full, to the extent of the benefits paid, from the proceeds of any recovery that I/we receive from third parties for such injuries, expenses or loss (but not in excess of such proceeds).

(Ex. C to Defendant's Motion for Summary Judgment, para. 1 & 2). Plaintiff asserts that the plan, under section B above and the subrogation agreement, only allows for an assignment of rights against the third party whose negligence caused the injuries or expenses, but not against any person, firm, corporation or entity that plaintiff may have claims against as a result of those injuries. That is, the plan does not require assignment of rights against Harmond's uninsured motorist benefits, and the Welfare Fund must pay plaintiff for medical treatment costs, in the amount of $66,757.49. The Welfare Fund argues that Section A above controls in this instance and clearly entitles the plan to subrogation against any person, firm, corporation or other entity, including plaintiff's own insurance company. Following this interpretation, the Fund does not owe any benefit payments to the plaintiff, Paul Harmond.

▮ In his report, the magistrate judge recommended that the plaintiff's motion for summary judgment be denied and the defendant's motion for summary judgment be granted. Harmond's objections to the magistrate judge's report and recommendation were filed on July 9, 1992. Plaintiff specifically objected to the magistrate judge's conclusion that "the trust agreement confers upon the trustee's discretion to construe the terms of the plan concluding that the court may only review the decisions of the trustees for an abuse of discretion." (Plaintiff's Objections to Proposed Findings and Recommendations, para. 2). The plaintiff specifically requested a *de novo* standard of review regarding

the trustees' denial of benefits. Furthermore, plaintiff argues even if abuse of discretion was the correct standard, the magistrate judge employed it incorrectly. Harmond contends the trustees abused their discretion in interpreting the plan to grant subrogation rights against his uninsured motorist coverage. Upon review, this court agrees with the magistrate judge's conclusion that the abuse of discretion standard is appropriate in this case, and that the trustees did not abuse their discretion in interpreting the plan to enforce subrogation rights against the uninsured motorist coverage. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 113, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Boyd v. Trustees, United Mine Workers Health & Retirement Funds*, 873 F.2d 57, 59 (4th Cir.1989). The court also finds the magistrate judge's conclusion that *Horne v. Superior Life Ins. Co.*, 203 Va. 282, 123 S.E.2d 401 (1962) is not applicable to the case at bar is accurate. *See FMC Corporation v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) and the cases cited therein; *see also Thompson v. Talquin Building Products Company*, 928 F.2d 649 (4th Cir.1991). Finally, the court is in accord with the magistrate judge that the plan contemplates the Welfare Fund's right of subrogation against the uninsured motorist benefits, and therefore the plaintiff, with receipt of the $100,000 in uninsured motorist coverage, is not presently entitled to benefits from the Fund.

The court, having examined the objections filed by the plaintiff to the magistrate judge's report and having made *de novo* findings with respect to the portions objected to, does hereby ADOPT and APPROVE the findings and recommendations set forth in that report. It is therefore ORDERED that plaintiff's motion for summary judgment is DENIED, and defendant's motion for summary judgment is GRANTED, and that judgment in this matter is entered in favor of the defendant.

IT IS SO ORDERED.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

PRINCE, United States Magistrate Judge.

### Order of Designation

By Order entered on February 21, 1992, Senior United States District Judge John A. MacKenzie designated the undersigned magistrate judge, pursuant to 28 U.S.C. § 636(b)(1)(B), to conduct such hearings as necessary to submit to a judge of this court proposed recommendations for disposition by that judge of the cross-motions for summary judgment filed by the parties. Hearings were held on February 24 and April 30, 1992, at which William D. Breit, Esquire, argued for plaintiff Paul M. Harmond ("Harmond") and F. William Kirby, Esquire, argued for defendant Teamsters Joint Council No. 83 of Virginia Health and Welfare Fund ("the Fund").

### NATURE OF THE CASE

This action is brought by the plaintiff under the civil enforcement provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B). The parties stipulate, and this Court agrees, that no genuine issues of material fact are in dispute and that resolution of this matter through summary judgment is appropriate.

The Fund was established forty years ago to provide health care and other welfare benefits to employees and beneficiaries of employees who are represented by affiliates of the International Brotherhood of Teamsters in certain collective bargaining agreements with various employers. It is a self-funded plan administered by a Board of Trustees made up of two union appointees and two employer appointees. The Fund is an employee welfare benefit plan, as defined by ERISA. *See* 29 U.S.C. § 1002(1)(A).

Paul M. Harmond, an individual participant in the Fund, was involved in an automobile accident with an uninsured driver on May 5, 1989. Harmond filed his first claim for benefits stemming from injuries incurred in the accident on May 24, 1989, and

submitted an additional claim two days later. In total, Harmond has submitted medical bills in the amount of $66,757.49 stemming from the accident to the Fund for payment under the terms of the plan.

Harmond has also received payment from his automobile insurance company under his uninsured motorist coverage in the amount of $100,000.[1] Thus far, the Fund has not made any payment to Harmond, contending that it is entitled under the terms of the plan to a right of subrogation to the proceeds of the uninsured motorists' payment; that interpretation effectively entitles Harmond to nothing from the Fund. In response, Harmond contends that the language of the plan entitles the Fund to nothing more than the assignment of the claim against the uninsured motorist that remains pending in the Circuit Court of the City of Virginia Beach.

Pursuant to this Court's Order of March 5, 1992, Harmond exhausted the administrative remedies provided by the plan. In its decision of March 13, 1992 exhausting Harmond's administrative remedies under the plan [hereinafter "Decision"], the Fund's Board of Trustees directed its administrators to "pay the claims of the participant [Harmond] in accordance with the applicable schedule of benefits in the event that the participant agrees to reimburse the Fund from the monies so recovered [from Harmond's automobile insurer] or in the event that the Court so orders." (Decision ¶ 5, attached as Ex. 1 to the Supp. Declaration of Sue D. Cummings).

As part of his efforts to exhaust his nonjudicial remedies, Harmond executed a subrogation agreement whose language parallels the language set out in the plan documents regarding subrogation and the assignment of claims. In addition to summary judgment in its favor, the Fund seeks attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

## DISCUSSION

The threshold question in any action for benefits is the standard of review to be applied to the Fund's decision. The Supreme Court has stated that "a denial of benefits challenged under ERISA is to be reviewed under a de novo standard of review unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989).

The Circuits have required varying degrees of specificity in the plan language providing discretion in order to implicate the "arbitrary and capricious" standard of review. *See, e.g., Baxter ex rel. Baxter v. Lynn*, 886 F.2d 182, 186–88 (8th Cir.1989) and cases cited therein. The Fourth Circuit has generally allowed plans to insulate themselves from de novo review by construing plan language granting discretion in interpreting ambiguous terms or resolving controversies in plan administration to mandate arbitrary and capricious review in the district court. *See DeWitt v. State Farm Ins. Cos. Ret. Plan*, 905 F.2d 798, 800–01 (4th Cir.1990); *DeNobel v. Vitro Corp.*, 885 F.2d 1180, 1186–87 (4th Cir. 1989); *Boyd v. Trustees, United Mine Workers Health & Ret. Funds*, 873 F.2d 57, 59 (4th Cir.1989).

There are obviously no magic words required to trigger the application of one or another standard of judicial review. In this setting, it instead need only appear on the face of the plan documents that the fiduciary has been "given [the] power to construe disputed or doubtful terms"—or to resolve disputes over benefits eligibility—in which case "the trustees' interpretation will not be disturbed if reasonable."

*DeNobel*, 885 F.2d at 1187 (quoting *Bruch*, 489 U.S. at 110, 109 S.Ct. at 954).

■ Both the plan documents and the Agreement and Declaration of Trust ("Trust Agreement") that established the plan contain broad grants of discretionary

---

1. That money is being held in escrow by the plaintiff's attorney pending resolution of this motion.

power to the Trustees. For example, the plan document in effect in 1989 states that

All questions of interpretation of this Plan shall be decided by the Trustees under the express authority granted to them by the Agreement and Declaration of Trust.

(Ex. A to Defs. Mot. for Summ. J. § 8.7(E), at 129.)[2] The Trust Agreement grants to the Trustees broad authority, *inter alia*, to determine the plan of benefits and all rules and regulations thereunder[3] and to construe the provisions and terms of the Trust Agreement in a manner binding upon all parties.[4] Viewed in light of existing Fourth Circuit case law, this language confers upon the Trustees discretion to construe the terms of the plan. *See DeWitt*, 905 F.2d at 800–01; *DeNobel*, 885 F.2d at 1186–87; *Boyd*, 873 F.2d at 59. Thus, this Court may review the Decision of the Trustees only for an abuse of that discretion.

▮ At issue here is the Trustees' interpretation of the subrogation provisions of the plan:

A. *Fund's Subrogation Rights.* In the event the Fund pays benefits under any Plan to any Employee, Dependent, or assignee for injuries, expenses, or loss caused by the negligence or wrongful act of a third party, the Fund shall be subrogated for the amount of such payment to all rights of the Employee or Dependent against any person, firm, corporation, or other entity as respects such injuries, expenses, or loss.

B. *Assignment of Claim.* Prior to payment by the Fund to an Employee, Dependent, or assignee of benefits

for injuries, expenses, or loss caused by the wrongful act or negligence of a third party, the Employee or Dependent shall execute a written assignment to the Fund of all rights, claims, interest, or causes of action which the Employee or Dependent has against such third party to the extent of such benefits and further the Employee of Dependent shall authorize the Fund at the Fund's expense to sue, compromise, or settle in his name or otherwise all such rights, claims, interest, or causes of action to the extent of benefits paid. In addition, the Employee or Dependent shall covenant that he has not discharged or released any such right, claim, interest, or cause of action against any third party.

C. *Prosecution of Claim.* Pursuant to directions received from the Fund, the Employee or dependent [sic] shall assist the Fund in prosecuting any rights, interest, claims or causes of action that have been assigned to the Fund against the third party. Such cooperation shall include, if requested by the Fund, the institution of a legal proceeding against the third party.

(Ex. A to Defs. Mot. for Summ. J. § 8.6, at 128.)[5]

According to Harmond, even under the deferential standard of review required in this case, the actions of the Trustees constitutes an abuse of discretion. While the basis of Harmond's argument has undergone substantial modification during the pendency of this motion, it has basically followed two routes: first, that the law of the Commonwealth provides some indica-

---

**2.** The plan documents were amended effective January 1, 1990. For example, the pertinent portion of the amended documents add the sentence "All such determinations shall be final and binding on all parties" to the language quoted *supra*. (Ex. B to Defs. Mot. for Summ.J. at 145). The defendant states in his memorandum that both plan documents are applicable to this case. Defs.Br. in Supp. Summ.J. at 2. However, the Court will evaluate the plan using the language in effect at the time of Harmond's injury.

**3.** Trust Agreement, art. V § 2.

**4.** Trust Agreement, art. V § 1.

**5.** It should be noted that the language in the subrogation agreement entered into by Harmond and filed in open court on April 30, 1992 is identical to that contained in the quoted provisions of the plan.

tion of the proper interpretation of the plan; and second, that, according to the plain and unambiguous language of the plan, the Fund's right to subrogation extends only against the tortfeasor and not, as the Fund seeks here, against the proceeds of an uninsured motorists' policy. Each contention, however, must ultimately fail under the appropriate standard of review.

First, plaintiff seeks to rely, at least in part, on the decision of the Supreme Court of Virginia in *Horne v. Superior Life Ins. Co.*, 203 Va. 282, 123 S.E.2d 401 (1962). In *Horne*, the court held that the assignment to an employer under the Workers' Compensation Act of "any right to recover damages which the injured employee ... may have against any other party," Va.Code Ann. § 65-38, did not encompass an assignment to the employer of uninsured motorist proceeds collected by the injured employee. *Id.* 123 S.E.2d at 404. After acknowledging that the purpose of the statute mandating uninsured motorist protection was "not ... to provide coverage for the uninsured vehicle, but ... to afford the insured additional protection in the event of an accident," the court held that, "[i]n the absence of a statutory provision giving the employer or its compensation carrier a right of subrogation against an insurer of the employee under the uninsured motorist provision of a liability policy, such a right does not exist." *Id.*

Plaintiff acknowledges that, in this case, ERISA preempts "all laws, decisions, rules, regulations or other State action having the effect of law, of any State" as they relate to an employee benefit plan. 29 U.S.C. § 1144(a), (c)(1); *see also FMC Corp. v. Holliday*, 498 U.S. 52, ——, 111 S.Ct. 403, 409, 112 L.Ed.2d 356 (1990) (deemer clause relieving self-funded ERISA plans from laws that purport to regulate insurance result in exemption of self-funded plan from all laws that relate to the plan). Yet, while disclaiming the applicability of state law, plaintiff contends that our decision should be guided by *Horne*.

▮ It is true that Congress intended that the federal courts "develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Bruch*, 489 U.S. at 110, 109 S.Ct. at 954 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987)). In developing such law, federal courts may, when appropriate, borrow from state law. *See, e.g., Singer v. Black & Decker Corp.*, 964 F.2d 1449 (4th Cir.1992). However, Harmond has not articulated any teaching of *Horne* that is appropriate for adoption as federal common law in this case. To the extent that Harmond may suggest that this Court adopt as federal common law the idea that proceeds from an uninsured motorist policy are exempt from subrogation under ERISA plans absent a statute granting such subrogation rights,[6] the notion should be rejected. "[C]ourts must be conscientious to fashion federal common law only when it is 'necessary to effectuate the purposes of ERISA.'" *Singer*, 964 F.2d at 1452. It was the intention of Congress that the specific terms for payment of benefits under ERISA plans be governed by the written plan documents, not by federal courts. *See* 29 U.S.C. § 1104(a)(1)(D).

Nor does *Horne* provide an appropriate guide for interpretation of the language of this ERISA plan. According to Harmond, *Horne* compels this Court to read section 8.6(B) of the plan as limiting the Fund's subrogation rights to the pursuit of Harmond's court action against the uninsured motorist. Such an argument ignores both the applicable standard of review and the language of the plan. Section 8.6(A) of the plan provides that, "[i]n the event the Fund pays benefits under any Plan to any Employee ... for injuries, expenses or loss caused by the negligence or wrongful act of a third party, the Fund shall be subrogated for the amount of such payments *to all rights of the Employee ... against any person, firm, corporation, or other entity as respects such injuries, expenses or loss.*" (Emphasis added). When read in conjunction with section 8.6(B), which requires the written assignment of any claim

---

**6.** *See* Pl's. Mem. at 10–12.

against the third-party tortfeasor, section 8.6(A) clearly contemplates a right of subrogation above and beyond the assignment of Harmond's cause of action against the uninsured motorist. While the limits of that right are not clearly spelled out in the plan, the discretion given to the Trustees requires this Court to defer to their reasonable interpretation of the plan language. Given that language, and the fiduciary duties of the Trustees to preserve the plan assets as well as to pay those claims entitled to plan coverage, the interpretation given by the Trustees in this case is not an abuse of their discretion.[7]

Finally, Harmond argues that, because the right of subrogation set out in section 8.6(A) arises only "[i]n the event the Fund pays benefits," this Court must grant his motion for summary judgment and await a subsequent suit by the Fund to enforce its subrogation rights once the benefits are paid. In the usual case, the plan contemplates a swift reimbursement of the claimant, with the Fund then stepping in to enforce the claimant's rights against the tortfeasor and any other source of collection. In the instant case, Harmond's failure to properly execute a subrogation agreement in a timely fashion delayed the point at which the Fund was required to pay benefits until after Harmond had settled with his uninsured motorist's insurance carrier and placed the proceeds from that insurance into escrow. As the Fund's claim to subrogation to those proceeds is a reasonable interpretation of section 8.6(A) of the plan, there is no procedural or substantive abuse in its denial of benefits absent such subrogation.

## MAGISTRATE JUDGE'S RECOMMENDATION

For the reasons stated above, it is RECOMMENDED that the Plaintiff's Motion for Summary Judgment be DENIED, that Defendant's Motion for Summary Judgment be GRANTED and that judgment in this matter be entered in favor of the defendant.

---

7. In response to the Fund's argument that Harmond would receive a double recovery if permitted to collect Fund benefits in addition to his uninsured motorist proceeds, Harmond argues in his memorandum that allowing subrogation to those proceeds would deny him even a total recovery due to the permanent and continuing nature of his injuries. It should first be noted that these allegations are unsupported by affidavit as required by Rule 56 of the Federal Rules of Civil Procedure. Further, while an exploration into the purposes of uninsured motorists coverage might be appropriate under a de novo standard of review, it is sufficient to note here that, to the extent Harmond's ultimate medical expenses exceed $100,000, he would be entitled to reimbursement for those expenses covered by the plan.