In the Matter of the ESTATE OF Edith DAMON, Protected Person.

UNISYS CORPORATION, Petitioner,

v.

James R. DAMON, Conservator of the Estate of Edith Damon, and Colorado State Hospital, Respondents.

No. 94SC558.

Supreme Court of Colorado, En Banc.

April 29, 1996.

Rothgerber, Appel, Powers & Johnson, Michael D. Nosler, Brian J. Spano, JoAnn L. Vogt, Denver, for Petitioner.

Peter Smith & Susan Young Law Offices, P.C., Peter M. Smith, Englewood, for Respondent James R. Damon.

Machol, Johannes & Vanstrom, P.C., James A. Kaplan, Denver, for Respondent Colorado State Hospital.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Damon v. Unisys Corp.*, 892 P.2d 350 (Colo.App.1994), the court of appeals affirmed the trial court's conclusion that a decision by petitioner Unisys Corporation (Uni-

sys) to deny continued benefits to beneficiary Edith Damon (Damon) under an employee benefits plan established pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (1994) (ERISA), was arbitrary and capricious. *Damon*, 892 P.2d at 357. Having granted Unisys' petition for certiorari review of the court of appeals' decision, we affirm.

## I

On August 6, 1986, Damon's husband, Robert, died from gunshot wounds inflicted by Damon. Damon was subsequently charged with the murder of her husband. On October 23, 1987, a jury in the criminal proceeding determined that Damon was not guilty of the murder by reason of insanity. Pursuant to section 16–8–105, 8A C.R.S. (1986 & 1995 Supp.), Damon was immediately committed to the custody of the Colorado State Hospital (the Hospital) for medical care and treatment. The Jefferson County District Court (the trial court) appointed Damon's son James Damon conservator of the estate of Damon (the Estate).

At the time of his death, Robert Damon was a participant in a post-retirement medical plan maintained by Unisys (the Plan). The parties agree that the Plan is governed by ERISA. Damon was a beneficiary of the

Plan. Unisys paid the costs of Damon's care and treatment at the Hospital from the date of her admission until June 1, 1989, when Unisys discontinued such payments.

At the time here pertinent, Unisys had entered into a contract with Aetna Insurance Company (Aetna), located in Minneapolis, Minnesota, to establish the "Unisys Benefits Payment Office" (UBPO), an office staffed entirely by Aetna personnel for administrative services associated with the Plan. The Plan itself provided that the UBPO had the "exclusive right and responsibility to interpret the provisions of the Plan" and listed the UBPO as the "party for appeals." However, during the applicable time period Jay W. Brubaker was employed by Unisys in Blue Bell, Pennsylvania, as Director of Welfare Plans/Financial Administrator. Pursuant to Unisys' contract with Aetna, Aetna was Unisys' agent but Unisys was the plan administrator for purposes of ERISA. Brubaker was responsible for supervising the UBPO and retained final authority to decide benefit payment questions.

In March of 1989, the UBPO unilaterally initiated a review of the care being provided to Damon to determine whether such services constituted care that was not medically necessary or constituted custodial or maintenance care.[1] The UBPO obtained Damon's

---

1. The plan excludes from coverage care that is not medically "necessary," as indicated by the following Plan provisions:

    Coverage is only provided for a service or supply that is **necessary** for the diagnosis, care or treatment of a physical or mental condition; i.e., widely accepted professionally in the United States as effective, appropriate and essential, based on recognized standards of the health care specialty involved.
    The following are **not** considered necessary:
    ● services of a covered health care provider that do not require the technical skills of such a provider
    ● services and supplies furnished to an inpatient if his or her physical or mental condition could have been safely and adequately diagnosed or treated while not confined
    ● services and supplies furnished mainly for the custodial care, personal comfort or convenience of the patient, any person who cares for him or her or any member of the patient's family....
    The Plan also excludes from coverage "Custodial or Maintenance Care," as defined in the following provisions:

    Neither custodial care nor maintenance care is covered by the Plan. Custodial care means services and supplies that ...
    ● are furnished mainly to train or assist the covered family member in personal hygiene and other activities of daily living rather than to provide therapeutic treatment
    Activities of daily living include such things as bathing, feeding, and taking oral medicines; **or**
    ● can safely and adequately be provided by persons without the technical skills of a covered health care provider.
    Such care is custodial regardless of who recommends, provides and directs it, where it's given, and whether or not the patient can be or is being trained to provide self care.
    Maintenance care is made up of services and supplies furnished mainly to ...
    ● maintain, rather than improve, a level of physical or mental function, **or**
    ● provide a protected environment free from exposures that can worsen the patient's physical or mental condition.

medical records from the Hospital and forwarded those records to Lynn Zimmerman, a member of the UBPO staff. Zimmerman, a nurse without expertise in psychological disorders like Damon's, submitted the records to Philippa Coughlan, Ph.D. (Coughlan), a consulting psychologist hired by Aetna but not a member of the UBPO staff, for an opinion concerning whether Damon's care was medically necessary.

On or about April 4, 1989, Coughlan drafted a memorandum to Zimmerman opining that Damon's condition did not require the acute level of treatment being provided by the Hospital. Zimmerman did not receive that memorandum until April 26, 1989. On April 18, 1989, Coughlan informed Zimmerman by telephone of Coughlan's opinion that Damon's treatment at the Hospital was not medically necessary. Coughlan also told Zimmerman that "we do not provide coverage in lieu of a sentence for a crime."

On April 19, 1989, Zimmerman telephoned Brubaker and advised him that Coughlan's review of Damon's medical records indicated that the care being provided by the Hospital was not medically necessary and constituted maintenance or custodial care. Brubaker stated that he agreed and determined that Unisys should deny benefits to Damon.

On April 21, 1989, Zimmerman sent a letter to Damon informing her that after June 1, 1989, she would no longer be entitled to benefits under the Plan because the care being provided by the Hospital "has become custodial or maintenance in nature."

Zimmerman did not consult the Plan before drafting her April 21, 1989, letter, and she never reviewed Damon's records. In a deposition Zimmerman admitted that she did not participate in the determination that Damon's care had become custodial or maintenance care, but simply transmitted pertinent documents.

On June 17, 1989, James Damon wrote a letter as conservator of the Estate to Zimmerman requesting review and reconsideration of the decision to terminate Damon's benefits. Zimmerman submitted this letter together with Damon's medical records to Coughlan for further review and asked Coughlan whether Unisys could sustain its decision to deny medical benefits to Damon. Coughlan responded that while Damon was emotionally disturbed, the type of care Damon was receiving at the Hospital was not medically necessary. Coughlan's findings were communicated to James Damon through a letter prepared on July 31, 1989. While a copy of this letter was sent to Brubaker, there is no evidence that Brubaker was contacted prior to the mailing thereof to James Damon.

On May 16, 1990, the Hospital sent Unisys a letter indicating that Damon had made considerable progress under a new treatment plan and requesting review of the denial of benefits. Included with this letter were copies of Damon's medical records and a letter from Damon's treating psychiatrist. The UBPO forwarded this material to Coughlan for review. On June 11, 1990, Coughlan drafted a memorandum confirming the denial of benefits after her review of the new materials. Zimmerman communicated Coughlan's conclusion to the Hospital in a letter dated July 10, 1990, a copy of which letter was sent to Brubaker. However, there is no evidence that Brubaker was contacted prior to the time this decision was made. The trial court found that during the entire benefits review process Brubaker never saw any of Coughlan's reports or other written materials and that Brubaker's participation in the decision to deny benefits to Damon consisted of "a phone call from Ms. Zimmerman who passed on Dr. Coughlan's yet to be written findings."

On September 10, 1990, and July 25, 1991, the Hospital filed a claim against the Estate in the trial court seeking payment plus statutory interest for services provided to Damon subsequent to June 1, 1989. James Damon disallowed the claim, and in December of 1990 moved for permission to file a third party complaint against Unisys for all sums claimed by the Hospital as well as for future services performed by the Hospital allegedly covered as benefits under the Plan. The trial court granted the motion and the Estate then filed a third party complaint against Unisys alleging that the actions of Unisys in terminating benefits to Damon constituted

breach of contract and a "violation of the [P]lan" enforceable under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B). The complaint alternatively alleged common law claims for lack of good faith and fair dealing and tortious bad faith termination of coverage, and sought compensatory damages, punitive damages, and a declaratory judgment for future benefits under the Plan.

In February of 1992, Unisys moved for partial summary judgment, alleging that the Estate's state law claims were preempted by ERISA. The trial court granted the motion and dismissed the state law claims.[2]

Following a bench trial, the trial court concluded that Unisys acted arbitrarily and capriciously in discontinuing benefits to Damon and that the Estate was denied a "full and fair review" of the denial of benefits as required by 29 U.S.C. § 1133(2). The trial court entered judgment for the Hospital on the Hospital's claim against the Estate in the amount of $302,348.34, plus interest, costs, and attorney fees. The trial court also set aside Unisys' denial of benefits, ordered Unisys to reinstate Damon's benefits under the Plan, and ordered Unisys to pay all benefits to which Damon would have been entitled absent the arbitrary and capricious denial.

Unisys appealed the trial court's judgment against it and the Estate cross-appealed the trial court's dismissal of its state law claims against Unisys. The court of appeals authorized the Hospital to join the cross-appeal. The court of appeals first determined that the Plan was " 'established or maintained by an employer for the purpose of providing medical benefits for its participants,' " *Damon*, 892 P.2d at 355 (quoting 29 U.S.C. § 1002(1) (1988)),[3] and was therefore governed by ERISA and regulations promulgat-

ed thereunder. The court of appeals affirmed the trial court's determination that the Estate's state law claims were preempted by ERISA and concluded that the trial court had no jurisdiction to consider the issue of whether the Estate was afforded a full and fair review of the denial of continued benefits pursuant to 29 U.S.C. § 1133(2). *Damon*, 892 P.2d at 357–58.[4] In addition, the court of appeals held that the trial court appropriately applied ERISA's "arbitrary and capricious" standard of review and affirmed the trial court's conclusion that the denial of benefits violated that standard.

## II

Unisys contends that the court of appeals misinterpreted and misapplied the "arbitrary and capricious" standard of review applicable in ERISA benefits proceedings. Specifically, Unisys argues that state courts reviewing a plan administrator's decision to deny benefits may determine only whether the decision was reasonable in view of the terms of the specific plan, and that in overturning Brubaker's decision to deny benefits to Damon both the trial court and the court of appeals improperly emphasized certain "procedural" matters that are cognizable only by federal courts. We reject these arguments.

## A

State courts have limited concurrent jurisdiction with federal courts over civil actions brought by participants in or beneficiaries of an ERISA-governed employee benefit plan who seek to recover benefits allegedly due under the terms of the plan, to enforce rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B),

**2.** Preemption under ERISA as to state common law or statutory claims occurs if a claim "relates to" an employee benefit plan unless that claim is based on a law that regulates insurance. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

**3.** The Plan exists in the form of an employee handbook. The handbook contains the following provisions with respect to additional plan documents: "This book describes only the highlights of your employee benefit Plans and does not

attempt to cover all the details. These are provided in the official plan documents which legally govern the operations of all the Plans." Despite the foregoing language, the record reflects that no other plan documents exist.

**4.** The court of appeals' conclusions with respect to the applicability of ERISA to the Plan, preemption of state law claims, and state court jurisdiction over 29 U.S.C. § 1133(2) claims are not before us.

(e)(1);[5] *Richland Hospital, Inc. v. Ralyon,* 33 Ohio St.3d 87, 516 N.E.2d 1236, 1239 (1987); *Gorman v. Life Ins. Co. of North Am.,* 811 S.W.2d 542, 545 (Tex.), *cert. denied,* 502 U.S. 824, 112 S.Ct. 88, 116 L.Ed.2d 60 (1991); H.R. Conf. Rep. No. 1280, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5107. In order to avoid subjecting plan administrators or fiduciaries to conflicting regulations, federal courts have exclusive jurisdiction over claims by a participant or beneficiary of such a plan that a plan administrator has breached an ERISA-defined fiduciary duty.[6] *Summers v. United States Tobacco Co.,* 214 Ill.App.3d 878, 158 Ill.Dec. 412, 417, 574 N.E.2d 206, 211 (1991); *Richland,* 516 N.E.2d at 1241; *see* 29 U.S.C. § 1132(a)(1)(B), (e)(1). The provisions of ERISA granting state courts jurisdiction to conduct certain types of proceedings reflects a congressional recognition that review of a plan administrator's decision to deny benefits often requires application of principles of contract law and that state courts have particular expertise in the application of such principles. *E.g., Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1500 n. 2 (9th Cir.1984).

ERISA constitutes a comprehensive body of employee benefit plan regulations intended "to supplant diverse state regulation of the field." *Id.* at 1500. In order to ensure uniform interpretation of ERISA, Congress intended that federal courts develop a "federal common law of rights and obligations under ERISA-regulated plans." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987)); *Menhorn,* 738 F.2d at 1499–1500; *Harmond v. Teamsters Joint Council No. 83 of Va. Health and Welfare Fund,* 795 F.Supp. 783, 788 (E.D.Va.1992), *aff'd,* 1 F.3d 1233 (4th Cir.1993); *see Parker v. Danaher Corp.,* 851 F.Supp. 1287, 1291 (W.D.Ark.1994) ("federal common law rather than state law ... applies" in ERISA litigation). State courts exercising concurrent jurisdiction over ERISA-based claims must apply federal standards as developed by federal courts in deciding whether a plan administrator has breached the provisions of a plan agreement. *Menhorn,* 738 F.2d at 1500 n. 2; *see Jett v. Blue Cross and Blue Shield of Ala.,* 890 F.2d 1137, 1138 (11th Cir.1989) (any contrary state law standards of review in ERISA proceedings are preempted); *Evans v. W.E.A. Ins. Trust,* 122 Wis.2d 1, 361

---

**5.** 29 U.S.C. § 1132(a)(1)(B) (1994) provides in pertinent part as follows:

> **(a) Persons empowered to bring a civil action.** A civil action may be brought—
> (1) by a participant or beneficiary—
> . . . .
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. . . .

29 U.S.C. § 1132(e)(1) (1994) provides, in pertinent part, as follows:

> **(e) Jurisdiction**
> (1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraph[ ] (1)(B) ... of subsection (a) of this section.

**6.** A fiduciary with respect to an ERISA-regulated plan is a person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i) (1994). The plan contained the following language with respect to designation of fiduciaries: "The [UBPO] has the exclusive right and responsibility to interpret the provisions of the Plan." The trial court noted that the Plan identified the UBPO as the fiduciary but determined that Brubaker was the "Plan Administrator and fiduciary." The court of appeals determined that both Zimmerman and Brubaker were "fiduciaries." The court of appeals determined that Zimmerman was a fiduciary because she was a member of the UBPO staff and was "instrumental in recommending to the administrator whether benefits were to be continued or terminated." *Damon,* 892 P.2d at 356. Although neither party challenges this conclusion, it is noteworthy that Zimmerman stated in her deposition that she had no involvement in the decision to terminate Damon's benefits other than to transmit documents to the relevant parties, that she had no expertise regarding the plan terms, and that she did not consult the Plan prior to her April 21, 1989, letter to Damon informing Damon of the discontinuation of benefits.

N.W.2d 630 (1985) (quoting H.R. Conf. Rep. No. 1280, 93d Cong.2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 5038, 5107).

■ Unisys contends that by emphasizing the conduct of Brubaker and Zimmerman the trial court and the court of appeals evaluated Unisys' decision to terminate Damon's benefits by the breach of fiduciary duty standard applicable in proceedings in which the actions of plan administrators or fiduciaries are challenged, which proceedings are committed to the exclusive jurisdiction of federal courts. Unisys contends that in adopting such erroneous standard of review the trial court and the court of appeals acted in excess of the limited concurrent jurisdiction accorded to state courts by ERISA.

We recognize that the jurisdiction granted by Congress to state courts to consider ERISA-based claims is limited to consideration of contract-like claims asserting that plan administrators or fiduciaries have breached the provisions of a plan by denying benefits. *See* 29 U.S.C. § 1132(a)(1)(B), (e)(1); *see also Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496 (9th Cir.1984); *Summers v. United States Tobacco Co.,* 214 Ill.App.3d 878, 158 Ill.Dec. 412, 574 N.E.2d 206 (1991); *Hamilton, Johnston & Co. v. Johnston,* 256 N.J.Super. 657, 607 A.2d 1044, 1047–48 (App.Div.1992); *Young v. Sheet Metal Workers' Int'l Ass'n Production Workers Welfare Fund,* 112 Misc.2d 692, 447 N.Y.S.2d 798 (N.Y.Sup.1981); *Duffy v. Brannen,* 148 Vt. 75, 529 A.2d 643 (1987). In this case the Estate and the Hospital alleged that Unisys breached its contractual obligations to Damon in violation of 29 U.S.C. § 1132(a)(1)(B) of ERISA. Neither the Estate nor the hospital has alleged that Brubaker or Zimmerman violated ERISA-defined fiduciary duties in denying Damon's claims. We therefore

reject Unisys' argument that the trial court and the court of appeals acted in excess of their jurisdiction.

**B**

■ In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109, 109 S.Ct. 948, 953–54, 103 L.Ed.2d 80 (1989), the United States Supreme Court addressed questions concerning the standard of judicial review applicable in actions commenced pursuant to section 1132(a)(1)(B) of ERISA. The Court held that a denial of benefits challenged under that statutory provision must be reviewed de novo unless the benefit plan under consideration confers upon the plan administrator discretionary authority to interpret the terms of the plan. *Bruch,* 489 U.S. at 115, 109 S.Ct. at 956–57. The Court explained that de novo review in such circumstances was consistent with judicial interpretation of benefit plans prior to ERISA, where, if the plan did not grant the plan administrator discretionary authority to construe plan terms, the court reviewed the claim for benefits as it would any contract claim. *Id.* at 113, 109 S.Ct. at 955–56; *see Guiles v. University of Mich. Bd. of Regents,* 193 Mich.App. 39, 483 N.W.2d 637, 640, 641 (1992).

In *Bruch* the Court indicated that the interpretation of a plan's terms by a plan administrator must be reviewed by the deferential arbitrary and capricious standard if the plan grants the administrator discretionary authority to make such interpretation.[7] *E.g., O'Shea v. First Manhattan Co. Thrift Plan & Trust,* 55 F.3d 109, 111–12 (2d Cir.1995); *Maez v. Mountain States Tel. & Tel., Inc.,* 54 F.3d 1488, 1505 (10th Cir.1995); *Lickteig v. Business Men's Assurance Co. of Am.,* 61 F.3d 579, 583 (8th Cir.1995); *Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375 (7th

---

7. Prior to *Bruch,* many courts had applied the arbitrary and capricious standard in ERISA cases regardless of whether the plan administrator had been granted discretion to construe plan terms. *Bruch,* 489 U.S. at 109, 109 S.Ct. at 953–54. Courts had also applied the arbitrary and capricious standard in cases arising under the Labor Management Relations Act, 29 U.S.C. §§ 141–187 (1994) (LMRA), because the LMRA did not provide for judicial review of decisions made by LMRA trustees. *Bruch,* 489 U.S. at 109, 109 S.Ct. at 953–54. Therefore, the arbi-

trary and capricious standard was adopted in the LMRA context in part as a means of asserting jurisdiction over suits under the LMRA by LMRA plan beneficiaries denied benefits by LMRA plan trustees. *Id.* Observing that ERISA expressly authorizes suits against plan administrators, the *Bruch* court rejected any jurisdictional analogy between ERISA and the LMRA, explaining that *"wholesale* importation of the arbitrary and capricious standard into ERISA is unwarranted." *See id.* (emphasis in original).

Cir.1994). However, the Court did not delineate the precise contours of the deferential standard it adopted. *See Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 900 F.2d 1138, 1142 (7th Cir.1990) (*Bruch* appears to present "a smorgasbord of possibilities" as to proper standard of review where plan administrator is granted such discretion). The Court did suggest that whether a plan administrator has acted arbitrarily or capriciously is to be determined by application of an abuse of discretion standard. *See Bruch,* 489 U.S. at 111, 115, 109 S.Ct. at 956–57. Referring to principles of trust law, the Court observed that when a trustee exercises discretionary powers, courts should only interfere to prevent an abuse of that discretion. *See id.* at 111, 109 S.Ct. at 954–55 (citing Restatement (Second) of Trusts § 187 (1959)).[8] The *Bruch* court also suggested, referring to trust law, that a fiduciary's interpretation of plan terms should be upheld if "reasonable." *Bruch,* 489 U.S. at 111, 109 S.Ct. at 954.

The parties agree for purposes of this appeal that the Plan grants discretionary authority to the plan administrator to construe plan terms, and therefore that the arbitrary and capricious standard of review is appropriate. In our view, the "arbitrary and capricious" and "abuse of discretion" standards as discussed in *Bruch* are coextensive. To the extent a plan administrator is granted discretionary authority to interpret plan terms by a plan, the plan administrator abuses that discretion by making an arbitrary and capricious decision. Other jurisdictions have adopted this approach in considering claims brought pursuant to section 1132(a)(1)(B). *E.g., Wildbur v. ARCO Chemical Co.,* 974 F.2d 631, 635 n. 7 (5th Cir.1992); *Brown v. Blue Cross and Blue Shield of Ala.,* 898 F.2d 1556, 1558 n. 1 (11th Cir.1990), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991); *Boyd v. Trustees of United Mine*

*Workers Health and Retirement Funds,* 873 F.2d 57, 60 (4th Cir.1989); *see Lickteig v. Business Men's Assurance Co. of Am.,* 61 F.3d 579, 583 (8th Cir.1995); *Schmitt v. Blue Cross and Blue Shield of Mo.,* 899 S.W.2d 953 (Mo.Ct.App.1995). Resolution of this case also requires a determination of what matters a court must consider when reviewing the discretionary determination of an ERISA plan administrator pursuant to the arbitrary and capricious standard. Various formulations of this standard have been articulated. *See, e.g., Maez v. Mountain States Tel. & Tel., Inc.,* 54 F.3d 1488, 1505 (10th Cir.1995) (based on " 'lack of substantial evidence, mistake of law, bad faith [or] conflict of interest' ") (citations omitted); *O'Shea v. First Manhattan Co. Thrift Plan & Trust,* 55 F.3d 109, 112 (2d Cir.1995) ("without reason, unsupported by substantial evidence or erroneous as a matter of law") (citation omitted); *Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375, 380 (7th Cir.1994) ("downright unreasonable"); *Griffis v. Delta Family–Care Disability,* 723 F.2d 822, 825 (11th Cir.) (whether the administrator's interpretation of plan was made "rationally and in good faith"), *cert. denied, Griffis v. Delta Family–Care Disability & Survivorship Plan,* 467 U.S. 1242, 104 S.Ct. 3514, 82 L.Ed.2d 823 (1984); *Bickel v. Long Term Disability Plan of Western Electric,* 541 F.Supp. 685, 687 (E.D.Pa.1982) (whether decision was based upon "a consideration of the relevant factors and whether there has been a clear error of judgment"); *Baker v. Sheet Metal Workers Local Union No. 9 Pension Trust Fund,* 669 P.2d 138, 140 (Colo.App.1983) (trustees of pension plan act arbitrarily and capriciously "when they act so as to contravene the express language of the plan they are charged with administering").

▮ In this case, the court of appeals adopted the arbitrary and capricious standard as articulated by the Tenth Circuit

---

8. Some courts have interpreted *Bruch* to require application of an abuse of discretion standard where a plan administrator is given discretion under a plan to construe the plan language. *E.g., Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.,* 32 F.3d 120, 123–25, 125 n. 4 (4th Cir.1994); *Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480, 481 (9th Cir.1990); *Sweatman v. Commercial Union Ins. Co.,* 39 F.3d 594, 598 (5th Cir.1994); *Pritt v. United Mine Workers of Am.1950 Benefit Plan and Trust,* 847 F.Supp. 427, 429 (S.D.W.Va.1994); *see de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1186 (4th Cir.1989) (*Bruch* authorizes reversal of plan administrator's decision "upon a showing of procedural or substantive abuse").

Court of Appeals. In the Tenth Circuit, a plan administrator's interpretation of a plan is arbitrary and capricious "if it is based on a 'lack of substantial evidence, mistake of law, bad faith, [or] conflict of interest.' " *Maez v. Mountain States Tel. & Tel., Inc.,* 54 F.3d 1488, 1505 (10th Cir.1995) (citations omitted); *Arfsten v. Frontier Airlines, Inc. Retirement Plan for Pilots,* 967 F.2d 438, 440 (10th Cir.1992); *see Rademacher v. Colorado Assoc. of Soil Conservation Districts Medical Benefit Plan,* 11 F.3d 1567, 1569 (10th Cir.1993); *Sandoval v. Aetna Life and Casualty Ins. Co.,* 967 F.2d 377, 382 (10th Cir.1992). As that court stated in *Sandoval,* in determining whether a plan administrator's decision was arbitrary and capricious a court may not consider all the evidence contained in the record; rather, a court must consider "only the arguments and evidence before the administrator at the time it made that decision." *Sandoval,* 967 F.2d at 380–81. If there was substantial evidence to support the plan administrator's decision, the decision will be upheld even if the reviewing court would have reached a contrary result. *Cf. Schmitt,* 899 S.W.2d at 957–58. We conclude that the substantial evidence test appropriately balances the competing policies embraced by ERISA of ensuring sufficient deference to good-faith decisions of plan administrators while giving significant weight to the rights of plan beneficiaries to receive plan benefits to which they are entitled.

■ Applying that standard to this case, we conclude that Brubaker's determination that Damon's care at the Hospital after June 1, 1989, was not medically necessary was not supported by substantial evidence. In reaching this determination, we may consider only the evidence before Brubaker at the time he made his decision.[9] Such evidence includes only Coughlan's verbal findings as conveyed to Brubaker by Zimmerman's telephone call of April 19, 1989. The sparse information

known to Brubaker did not constitute substantial evidence supporting his decision to deny benefits to Damon. We reach the same conclusion with respect to Unisys' later decision to maintain the initial denial of benefits. The record reveals that Brubaker was not involved in that subsequent determination, and that Zimmerman simply assumed that Brubaker's initial decision was still effective.

Unisys contends that both Brubaker and Zimmerman properly relied on the opinion of their medical consultant. While reliance upon the opinion of a medical consultant by a plan administrator is customary and often desirable, *see, e.g., Donato v. Metropolitan Life Ins. Co.,* 19 F.3d 375 (7th Cir.1994); *Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co.,* 32 F.3d 120 (4th Cir.1994); *Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480 (9th Cir.1990), in this case Brubaker relied solely on his telephone discussion with Zimmerman in reaching his decision. Zimmerman was not Brubaker's medical consultant.

We do not here determine whether Damon's care was in fact medically necessary or whether it constituted custodial or maintenance care. *See Sandoval,* 967 F.2d at 381 ("The district court's responsibility lay in determining whether the administrator's actions were arbitrary and capricious, not in determining whether Sandoval was, in the district court's view, entitled to disability benefits."). Rather, we conclude that Brubaker's decision to deny Damon's claims for benefits under the Plan was arbitrary and capricious, as the trial court and the court of appeals determined.

### III

For the foregoing reasons, we affirm the judgment of the court of appeals.

---

**9.** Unisys contends that there was substantial evidence before Coughlan to support her opinion with respect to Damon's care. The relevant inquiry here is not what materials Coughlan considered in reaching her opinion, but what materials Brubaker considered in making the final decision on behalf of Unisys. Coughlan was not

a plan administrator. Coughlan was not a member of the UBPO staff allegedly authorized by the Plan to interpret plan terms, had no particular knowledge about the Plan, and in order to maintain her objectivity purposefully did not consult the Plan before reaching her medical opinion.